STATE OF CONNECTICUT *v.* ROGER LUBESKY
(10380)

PETERS, C. J., HEALEY, SHEA, DANNEHY and COVELLO, Js.

Argued December 5, 1984—decision released March 19, 1985

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, was *Joette Katz,* for the appellant (defendant).

*Walter H. Scanlon,* chief assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney for the appellee (state).

DANNEHY, J. In part one of the indictment against him the defendant was charged with murder in violation of General Statutes § 53a-54a and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). He was found guilty by the jury. In another trial by jury on part two of the indictment, the defendant was found to be a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) and sentenced accordingly. The issues raised on appeal are (1) whether his right to compulsory process under the state and federal constitutions was violated; (2) whether his right to confrontation was violated; (3) whether his trial was tainted by prosecutorial misconduct; and (4) whether he was deprived of effective assistance of counsel. We find no error.

The defendant was convicted primarily on the testimony of Thomas Radke. Radke testified that in the early morning hours of September 1, 1979, he and Patricia Reagan were together in the bedroom of the basement apartment they shared in Waterbury. Reagan was up watching television. Radke was in bed, sleeping with a pillow wrapped around his head to drown out the noise of the program Reagan was watching. He was awakened by the sound of the defendant's voice. The defendant was well known to Radke. As a matter of fact, the defendant had stayed in the apartment with Reagan and Radke for some time after he had been released from incarceration. Radke heard the defendant say, "Turn down the t.v.," and then, "Somebody told about the Mancione score." Almost simul-

taneously he heard three shots fired from a gun. As he started to get up he lost consciousness. When he revived, the pillow was stuck to the left side of his head. He saw Reagan on the floor, got up and grabbed her shoulder. She did not move. He dressed and walked to a nearby cafe. The police and an emergency vehicle were summoned to the apartment where Reagan was found dead. Radke was taken to a hospital where he was surgically treated for five bullet wounds to the head and neck. A forensic expert determined that the bullets removed from Reagan and Radke were fired from the same gun. The gun was never located. The defendant was convicted of the murder of Reagan and for an assault in the first degree upon Radke.

On September 5, 1979, Radke gave a signed statement to the police implicating the defendant in the shootings. He made conflicting statements on at least two occasions, however, once to the defendant's attorney and again when he testified before the grand jury, that he did not think it was the defendant who shot him and Reagan. At the defendant's trial, Radke admitted that he had lied to the defendant's attorney and the grand jury but explained that he did so in the hope that the charges against the defendant would be dropped so that Radke might wreak his own revenge.

I

The defendant's first contention is that the state's alleged concealment of the whereabouts of Thomas Radke violated the defendant's rights under the compulsory process and due process clauses of the Connecticut and United States constitutions.

Radke, the state's primary witness linking the defendant to the crimes, testified on direct examination for the state and identified the defendant as the perpetrator. He was cross-examined relentlessly for the better part of two days. His testimony concluded on

June 27, 1980. At that time, defense counsel did not indicate to the trial court that Radke would be required to testify again. Neither was there a request that the trial court order him back at any specific time.

On July 2, 1980, the defense began to present its case. On July 3, 1980, the defendant moved that the judge order the state to disclose the whereabouts of Radke, if the state knew where he was. The state indicated that it did not know where he was, that Radke was not under protective custody, and that he would be produced in court, if he could be located. Defense counsel affirmatively accepted the state's representation. The trial court granted the motion. The defendant was also actively trying to locate Radke.

On August 15, 1980, at the sentencing hearing, the defendant was heard on a motion to dismiss. He claimed that on August 11, 1980, after acceptance of the verdict and discharge of the jury, he learned that Radke had entered the federal witness protection program. It was the defendant's position that the state not only knew of Radke's whereabouts when it disclaimed such knowledge on July 3, 1980, but that the state had even assisted Radke's entrance into the program. The defendant claimed that, subsequent to his cross-examination of Radke, he uncovered new information with respect to a statement Radke gave to the police concerning forgery and larceny charges pending against Radke. He argued that because the state had "sequestered" Radke, the defendant lost his right to "confront Mr. Radke with respect to his statements on the witness stand with respect to contradicting his earlier testimony. . . ."

The state vigorously denied that it had hid Radke or misrepresented his whereabouts. According to the state, it notified the United States Attorney's Office before trial of Radke's desire to enter the federal wit-

ness protection program. The state was then told that Radke would be interviewed by the appropriate federal agency and that the state would have nothing else to do with the matter. On July 27, 1980, when Radke concluded his testimony, he had not been approved to enter the program. He had not entered the program on July 3, 1980, when the defendant made his motion that the whereabouts of Radke be disclosed or even on July 9, 1980, when the trial ended. Radke was approved to enter the program on July 11, 1980, and at a later time the state learned of this approval. Radke left the federal protection program on July 24, 1980.

The trial court denied the defendant's motion stating that although Radke "may have been in 'some Federal program,' " the court did not know when he went into the program or when the state became aware of it. The court also noted that Radke had undergone extensive cross-examination and that there had been no request for a continuance. The defendant took an exception to the trial court's ruling.

Article first, § 8, of the Connecticut constitution entitles a defendant in a criminal prosecution "to have compulsory process to obtain witnesses in his behalf." Its federal counterpart provides that "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const., amend. VI.

There is nothing in the record to indicate that the defendant's right to compulsory process, either under the state or federal constitution, has been violated. Radke testified as a witness for the state. His cross-examination by defense counsel was gruelling. At the conclusion of his testimony, he was excused and neither party indicated that he would be called again as a witness. As the trial court pointed out when it granted the defendant's motion to disclose the whereabouts of

Radke on July 3, 1980, Radke would have had no reason, based on what happened in the courtroom, to think that he might be called as a witness again. At that time, the state indicated that it would produce Radke if it could find him. The record does not disclose what further efforts, if any, were made by either the defendant or the state.

The defendant claims that new information acquired subsequent to Radke's testimony, but prior to the end of the trial, necessitated Radke's recall as a witness on the defendant's behalf. Yet the defendant at no time either requested a continuance or moved for a mistrial. Under these circumstances, we find the defendant's first contention to be without merit. Accordingly, the claim that the defendant's right to compulsory process was violated is rejected.

The defendant also raises a due process claim. We are in agreement with the rule enunciated in federal cases that the deliberate concealment of an eyewitness in order to prevent his testifying at trial constitutes a prima facie deprivation of due process. See *Ashley* v. *Wainwright,* 639 F.2d 258 (5th Cir. 1981); *Clark* v. *Blackburn,* 632 F.2d 531 (5th Cir. 1980); *Lockett v. Blackburn,* 571 F.2d 309 (5th Cir. 1978), cert. denied, 439 U.S. 873, 99 S. Ct. 207, 58 L. Ed. 2d 186 (1978); *Curtis* v. *Rives,* 123 F.2d 936 (D.C. Cir. 1941). The parties are clearly at odds over whether the state deliberately concealed the whereabouts of Radke from the defendant. Absent an evidentiary hearing on this issue, the claim is extremely difficult to review. The defendant has failed to show on this record that the state knew anything more than he did as to Radke's whereabouts.[1] We, therefore, find no error.

---

[1] This holding, however, does not preclude the defendant from pursuing his claim in an appropriate collateral action in which he will have an opportunity to develop a complete factual record at an evidentiary hearing.

## II

The defendant next argues that the trial court erred in limiting his cross-examination of Radke in violation of his constitutional right of confrontation under the sixth amendment to the United States Constitution. We do not agree.

Radke admitted on direct examination that he had pleaded guilty to thirteen counts of forgery in the first degree and thirteen counts of larceny in the third degree on March 12, 1980, and that he was awaiting sentencing on these charges at the time he testified. He further testified that no promises had been made to him in regard to these charges in return for his testimony but that nevertheless he held onto some hope of leniency in the disposition of the charges.

Radke was cross-examined by the defendant at length about these charges and repeated that he hoped he would get consideration for his testimony but that no deal had been made. On recross-examination Radke was asked the following question: "What do you stand to get? What is the most you can get on that—those cases, Mr. Radke?" The state's objection was sustained by the court. The defendant claims that the court's ruling restricted his right to expose Radke's motivation and interest in testifying. Although no exception was taken to the trial court's ruling, because "it implicates the defendant's sixth amendment right of confrontation we consider the issue under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973)." *State* v. *Wilson,* 188 Conn. 715, 720, 453 A.2d 765 (1982).

The sixth amendment to the constitution guarantees the right of an accused in a criminal prosecution "to confront the witnesses against him . . . ." *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The primary interest secured by confron-

tation is the right to cross-examination; *Douglas* v. *Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); and an important function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy*, 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959). Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. *State* v. *Corley*, 177 Conn. 243, 246, 413 A.2d 826 (1979); *State* v. *Luzzi*, 147 Conn. 40, 46, 156 A.2d 505 (1959). To comport with the constitutional standards embodied in the confrontation clause the defendant in exercising his right of cross-examination must be allowed to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Cross-examination with regard to motive permits the exploration of felony charges even when the witness has not yet been convicted. *State* v. *Wilson*, supra, 720.

Although it was proper for the defendant to explore whether Radke's testimony was motivated by the hope for leniency in connection with the twenty-six pending charges against him, we are satisfied, upon review of the entire cross-examination, that the opportunity to impeach the witness sufficiently comported with the constitutional standards embodied in the confrontation clause. Radke was cross-examined rigorously and extensively about his motives for testifying, especially in connection with the pending forgery and larceny charges. He admitted that he hoped to get a lesser sentence on the pending charges by reason of his testifying but maintained that this hope was not part of his motivation for testifying. The trial court's ruling, when examined in the context of the extensive cross-

examination of Radke, does not rise to the level of constitutional interference with the defendant's right of confrontation.

## III

We find no merit in the defendant's contention that the prosecutor's misconduct entitles him to a new trial. The defendant complains of two separate acts of misconduct on the part of the prosecutor, first, in his cross-examination of the defendant and second, in his closing argument to the jury. We hold that the actions of the prosecutor were not such as to deny the defendant a fair trial.

The state, on cross-examination of the defendant, attempted to explore his use of drugs, his psychiatric history, and his ownership and use of guns. The trial court did not allow the state to inquire into these matters, consistently sustained the defendant's objections, and continuously admonished the prosecutor to refrain from such questioning. The defendant contends that the prosecutor deliberately attempted to undermine the authority of the trial court by pursuing these impermissible lines of inquiry, despite the trial court's rulings to the contrary, and that the subjects which the state persisted in pursuing involved flagrantly prejudicial material. He further argues that the improprieties during cross-examination were exacerbated by the prosecutor's theme during summation that the defendant's criminal past could be explained only by "[j]ust plain, anti-social rottenness."

Although the state denies that the lines of inquiry complained of were improper, it contends that the timely objections by the defendant and the diligent exclusion of the questions by the court fully protected the defendant.

At the outset, we note that the defendant at no time moved for a mistrial as a result of the state's unsuccessful attempts to enter certain prohibited areas during cross-examination. No objection to the language used in the state's closing argument to the jury was raised. Where counsel does not request a curative instruction or seek a mistrial, "he presumably does not view the remarks as so prejudicial that his client's right to a fair trial is seriously jeopardized." *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). While we disagree with the prosecutor's conception of sound argument and disapprove of his personalized tirade, we do not think that, under the circumstances of this case, his argument could have influenced the jury's verdict on the question of guilt. The same may be said of his aborted cross-examination. We can see no reason to depart from our prior holding that the " 'fact that counsel for the accused took no exception to the remarks of the State's Attorney, either at the time they were made or at the close of his argument, was a waiver of the right of the accused to now press this assignment of error.' " (Citations omitted.) *State* v. *Malley,* 167 Conn. 379, 387, 355 A.2d 292 (1974). Our own analysis of the record in this case reveals that the judgment was not contrary to the evidence and the purported insinuations were not of the aggravated character found in *State* v. *Couture,* 194 Conn. 530, 482 A.2d 300 (1984), cert. denied, U.S. , 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

## IV

Finally, the defendant asserts that he had ineffective assistance of counsel. The essence of his assertion is that his attorney (1) failed to seek to withdraw from the case in order to testify on the defendant's behalf regarding statements Radke made to defense counsel; (2) permitted the state to introduce a "crucial" piece of testimony after the trial court had previously excluded such testimony; and (3) failed to protect prop-

erly his right to a fair trial with respect to the state's inquiries on cross-examination and summation. The state claims that defense counsel's assistance was " 'reasonable considering all the circumstances.' " See *State* v. *Tirado,* 194 Conn. 89, 92, 478 A.2d 606 (1984).

The test for effective assistance of counsel is whether "defense counsel's performance was ' "reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." ' " (Citations omitted.) *State* v. *Mason,* 186 Conn. 574, 577–78, 442 A.2d 1335 (1982). On the issue of counsel's effectiveness, the defendant has the burden of proof. *State* v. *Tirado,* supra, 92. The defendant has failed, on the basis of this record, to demonstrate that his counsel was ineffective. The mere statement that he was denied effective assistance of counsel is without meaning absent a showing that his attorney's action as it pertains to this case was a violation of the duty of defense counsel to his client. We reiterate that the issue of the adequacy of trial counsel is more properly pursued on a motion for a new trial or on a petition for a writ of habeas corpus rather than on direct appeal. *State* v. *Tirado,* supra, 93.

There is no error.

In this opinion the other judges concurred.