STATE OF CONNECTICUT *v.* SHAUN ROWE
(AC 23586)

Flynn, West and McDonald, Js.

Argued February 17—officially released October 19, 2004

*Janice N. Wolf*, assistant public defender, with whom was *Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Julia K. Conlin*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Kevin C. Doyle*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Shaun Rowe, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the second degree

in violation of General Statutes § 53a-123 (a) (3), carrying a pistol without a permit in violation of General Statutes § 29-35 and having a weapon in a vehicle in violation of General Statutes § 29-38. The defendant also appeals from the trial court's judgment of conviction of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1) and the enhancement of his sentence for having been found guilty of committing a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. The defendant claims that his due process right to a fair trial was violated by the introduction of misleading consciousness of guilt evidence and improper comments by the prosecutor. We agree and reverse the judgment of the trial court.

The jury and the court reasonably could have found the following facts. At approximately 10:45 p.m. on April 30, 2001, the defendant and Antoine Odum went to the drive through window at the McDonald's restaurant on Whalley Avenue in New Haven. Odum was driving his vehicle, and the defendant was in the passenger seat. While the defendant and Odum were at the drive through window, the victim, Marquise Avery, parked his vehicle in the McDonald's parking lot and entered the restaurant. There were no other cars in the parking lot when the victim arrived. After the defendant and Odum purchased food, they parked their vehicle in the parking spot next to the victim's vehicle. When the victim exited McDonald's, the defendant told the victim to "come here." The victim responded that he did not know the defendant. The defendant then pointed a handgun at the victim and cocked it. At that point, the victim approached the vehicle and was ordered to give the defendant the chain that he was wearing around his neck and to empty his pockets.

The defendant argues on appeal that the state improperly introduced evidence relating to his consciousness

of guilt, sought a jury charge on consciousness of guilt and improperly misled the jury to believe that his flight from the police on May 13, 2001, could be related only to the charges for which he was on trial.

The following facts are relevant to that issue. During its case, the state called Odum, who had pleaded guilty to the robbery and was awaiting sentencing. Before the jury, the prosecutor first established that Odum knew the defendant. He then asked what Odum did with the defendant, and Odum testified that he sold drugs with him. Odum then testified that he was present in his vehicle on April 30, 2001, when the defendant robbed the victim at gunpoint. Odum also testified that he was driving that car on May 13, 2001, when he and the defendant, along with another individual, fled from the police.

Prior to calling Odum, the prosecutor informed the court that he had instructed Odum that "we weren't going to bring out on direct anything related to the arrest on May 13, 2001, when [Odum] was with this defendant, about the defendant having narcotics because that's not an issue before the court." The prosecutor then added, "if it's brought up on cross-examination, then I may follow up on it."

Before Odum's examination had begun, the state gave defense counsel a copy of Odum's statement to the police, which was marked for identification. In Odum's statement to the police, Odum stated that he fled from the police on May 13, 2001, because he was on probation, and the defendant, also on probation, was in possession of drugs.

The state later called Officer David Rivera of the New Haven police department. Rivera testified that he was on patrol on the evening of May 13, 2001. The prosecutor asked Rivera whether he prepared a report relating to an incident on that date. While examining Rivera, the

prosecutor showed him a copy of his police report, which was not marked as an exhibit. The defendant objected to the officer's testimony, arguing that there was no evidence regarding an incident occurring on May 13, 2001. The court overruled the defendant's objection. Later, the defendant stated: "For the record . . . no foundation has been laid that there is any incident so far."

Rivera then testified that he was on patrol on May 13, 2001, with two other officers. At approximately 11 p.m., Rivera observed a vehicle fail to obey a traffic signal. Rivera activated the overhead lights and siren on his police car in an attempt to stop the vehicle. When the vehicle stopped, the officers exited their cruiser and approached the vehicle. Once the officers exited their cruiser, the vehicle sped off. The officers returned to their cruiser and proceeded to follow the vehicle. After traveling a short distance, the vehicle stopped, and the three individuals inside exited and ran in different directions.

Rivera also testified that the officers pursued the individuals on foot. After chasing the driver for approximately two blocks, Rivera apprehended the defendant as the defendant was cut attempting to climb over a barbed wire fence. Odum was also in the vehicle, along with another individual. In his incident report, Rivera wrote that while chasing the defendant on foot, he observed the defendant throw a small bag to the ground. After the defendant was apprehended, Rivera retrieved the bag, in which were twenty-nine smaller bags containing a white rock-like substance that field tested as crack cocaine. According to the report, numerous empty plastic bags used to package crack cocaine were found in the vehicle.

At the close of the evidence, the state filed a request to charge, and the court instructed the jury as to con-

sciousness of guilt on the basis of the defendant's flight on May 13, 2001. In closing argument, the defendant argued that the robbery never occurred and that the victim, who had a criminal record and whose testimony was contradicted by a police officer, was lying. He also pointed out that Odum, who had pleaded guilty to involvement in the robbery, hoped for leniency and probation because of his testimony.

During closing argument[1] and again during rebuttal argument,[2] the prosecutor commented on the defendant's consciousness of guilt in relation to Rivera's testimony. In its charge to the jury, the court instructed the jury on consciousness of guilt.[3] During its deliberation,

---

[1] During closing argument, the prosecutor stated: "And remember the testimony of Officer Rivera, who stopped the defendant and Mr. Odum in a vehicle two weeks, almost two weeks after the robbery . . . sees the vehicle go through a red light, tried to effect a motor vehicle stop and the vehicle speeds off. Ultimately, he identifies this defendant getting out of the driver's side of the car and running and running fast, running away from the police. He was in a hurry to get out of the way.

"Remember what Officer Rivera told you? As he chased him, making it clear, this is no mistake here, Officer Rivera, he wanted him to stop. He was chasing him, and [the defendant] tries to scale an eight to ten foot chain fence with barbed wire on the top and cuts his hand trying to get away from Officer Rivera.

"Why is he running? Two weeks after the robbery, he is in the same car he used in the robbery with one of the other individuals involved in the robbery. Listen to the judge's instructions about consciousness of guilt. Is it reasonable to infer that he knew he was guilty of the crime charged? You must decide that."

[2] During rebuttal argument, the prosecutor stated: "[Rivera] told you he chased [the defendant], he identified [the defendant] and his date of birth, and he had an injury to his hand trying to climb a barbed wire fence eight to ten feet high. Why is [the defendant] running if this robbery never occurred? Why is he running two weeks after the robbery when he is with Mr. Odum?"

[3] The court instructed the jury as follows: "I'm going to charge you on a concept known as consciousness of guilt. The law recognizes a principle known as consciousness of guilt. Certain conduct of a person may be considered by you to show his knowledge or consciousness of guilt. When a person is on trial for a criminal offense, it is proper to show conduct subsequent to the alleged criminal offense which may fairly have been influenced by that act.

the jury asked to have Rivera's testimony read back before returning a guilty verdict.

The defendant claims on appeal that the consciousness of guilt evidence was misleading and that the prosecutor's comments exacerbated its prejudice. At trial, the defendant objected to the introduction of Rivera's testimony because of a "lack of foundation," but did not object to the court's instructions or the prosecutor's remarks during closing argument. Should we conclude that the defendant did not preserve his claims, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Our Supreme Court has held that it is unnecessary for a defendant to seek to prevail under the specific requirements of *Golding* in these circumstances. *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). The court explained: "The reason for this is that the touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). As we stated in that case: In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by

"Now, the state has introduced evidence from which you are being asked to infer that [the defendant] fled from the police on May 13, 2001. Flight can be one type of conduct which would show consciousness of guilt. Whether you draw such an inference from the facts as you find them to be is completely up to you. You should consider all of the evidence in this regard in deciding whether to draw such an inference.

"While you are permitted to draw an inference of consciousness of guilt from such conduct, you are not required to do so. It is up to you to decide what, if any, weight you will give to such evidence in determining whether the defendant has been proven guilty of the crimes charged."

defense counsel or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . .

"Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial. The application of the *Williams* factors, therefore, is identical to the third and fourth prongs of *Golding*, namely, whether the constitutional violation exists, and whether it was harmful. . . . Requiring the application of both *Williams* and *Golding*, therefore, would lead . . . to confusion and duplication of effort. Furthermore, the application of the *Golding* test to unchallenged incidents of misconduct tends to encourage analysis of each incident in isolation from one another. Because the inquiry must involve the entire trial, all incidents of misconduct must be viewed in relation to one another and within the context of the entire trial. The object of the inquiry before a reviewing court in claims involving prosecutorial misconduct, therefore, is always and only the fairness of the entire trial, and not the specific incidents of misconduct themselves. Application of the *Williams* factors provides for such an analysis, and the specific *Golding* test, therefore, is superfluous." *State v. Stevenson*, supra, 269 Conn. 573–74. Accordingly, we will so review the defendant's claim to determine whether his due process right to a fair trial was violated.

In summation, the prosecutor repeatedly argued that the reason the defendant ran from the police on May 13, 2001, was because the car he and Odum were using on the night in question was the same car they used during the robbery two weeks earlier. The prosecutor

asked the jury why the defendant would have fled from the police on May 13, 2001, if the robbery never occurred.

On appeal, the state argues that the circumstances of the defendant's being with Odum in the robbery vehicle supported the argument that the defendant fled because of the earlier robbery. The state does not cite any other evidence to support its claim that the defendant ran from Officer Rivera because of the robbery. In its brief to this court, the state refers to the failure of the defendant to present evidence that he fled because of the drugs found during his flight. The state's brief recognizes that the defendant "could have presented such evidence [of drugs] to the jury through documentary evidence or testimony, but chose not to do so." That, of course, would be, as the state also recognizes, "damaging evidence of drugs found at the time . . . ." Because the state in its brief recognizes that such documentary evidence existed and acknowledges the reference to the report in the record, we will consider the police incident report solely in connection with what the prosecutor knew about the May 13, 2001 incident when he presented the consciousness of guilt evidence.[4]

The fourteenth amendment to the United States constitution requires that the state not misrepresent facts at a trial. *Miller* v. *Pate*, 386 U.S. 1, 7, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967). Even if we disregard Rivera's report, Odum's statement sets forth that on May 13, 2001, the parties fled in the vehicle and fled on foot after the vehicle was stopped because the defendant was in possession of drugs. The record thus reflects that the prosecutor knew about the drugs, as well as

[4] The defendant had made Rivera's report part of the appendix to his appellate brief. The state filed a motion to strike the report, which this court granted without prejudice to our taking judicial notice.

Odum's reason for the flight when presenting the evidence of flight, and argued that the flight was a response to the robbery.

The defendant also knew of the drugs at trial. Despite the fact that the state had elicited testimony that the defendant had sold drugs with Odum, the defendant did not present evidence that he was in possession of drugs when he fled on May 13, 2001. Given the prejudicial nature of this explanation for his flight, however, we cannot fault the defendant for not taking the Hobson's choice forced on him. Moreover, that does not justify the prosecutor's asking why the defendant was running from the police on May 13, 2001, if the robbery never occurred. We conclude that this was improper.

The defendant also claims that the prosecutor, during rebuttal argument, improperly referred to the fact that the defendant did not testify. We agree.

The following facts are relevant to that claim. The defendant did not testify. During rebuttal argument to the jury, the prosecutor stated: "There were basically only three people in the parking lot when [the robbery] happened. Three people present, and two of the three [the victim and Odum] told you what happened." At the conclusion of the state's argument, the defendant requested a mistrial because of the remark, which the court denied.

We conclude that the remark was improper because it directly and negatively referred to the defendant's failure to testify. See *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *State* v. *Parrott*, 262 Conn. 276, 292–94, 811 A.2d 705 (2003). The jury would naturally and necessarily take the remark to be a comment on the failure of the defendant to testify. See *State* v. *Rizzo*, 266 Conn. 171, 270, 833 A.2d 363 (2003).

We now turn to the issue of whether the defendant received a fair trial.

"In analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial, an inquiry that in the present case necessarily will require evaluation of the defendant's other misconduct claims." (Internal quotation marks omitted.) *State* v. *Jarrett*, 82 Conn. App. 489, 501–502, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

"To prove prosecutorial misconduct [during the course of closing argument], the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) Id., 501.

We conclude that the defendant was prejudiced by the presentation of the flight evidence in such a light that the flight could be explained only by his consciousness of guilt for the crimes underlying his appeal. In his closing argument, the prosecutor cited the defendant's flight on May 13, 2001, questioning why the defendant would run from the police if he did not commit the robbery two weeks before on April 30, 2001. The absence of evidence of any other reason to flee supported the state's argument. The defendant's possession

of illegal narcotics, however, could have been found by the jury to be the immediate and compelling reason for his headlong flight.

As requested, the court instructed the jury that it was permitted to draw an inference from the defendant's flight that he was guilty of the robbery. The central issue at the trial was whether there was a robbery. We conclude that it was prejudicial, under the circumstances, for the prosecutor to state that the defendant fled because he was in the car with Odum and that the robbery had occurred. The implication was, contrary to the facts, that there was no other reason for the defendant's flight. For those reasons, we conclude that the prosecutor's remarks likely affected the outcome of the trial, were egregious and undermined confidence in the fairness of the verdict.

In so doing, we assess, as required by *Williams*, the strength of the state's case, which was undermined by the questionable credibility of the victim and Odum's desire to obtain a suspended sentence, and consider the impropriety of the prosecutor's comments regarding the defendant's exercise of his right not to testify.

The defendant did not object to the prosecutor's remarks about the defendant's flight on May 13, 2001. "When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial. . . . In other words, the fact that defense counsel did not object to one or more incidents of misconduct must be considered in determining whether and to what extent the misconduct contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." (Citations omitted; internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 575–76. "[C]ounsel's failure to object

at trial, while not by itself *fatal* to [the] defendant's claim, frequently will indicate on appellate review that the challenged [comments] did not deprive the defendant of his right to a fair trial." (Emphasis in original; internal quotation marks omitted.) Id., 594–95, quoting *State* v. *Ceballos*, 266 Conn. 364, 414, 832 A.2d 14 (2003).

In this case, the remarks of the prosecutor implied that there was no other reason to flee, which failed to reflect the facts surrounding the defendant's flight, but did reflect the evidence presented to the jury. Consequently, defense counsel could not object that the evidence at trial did not support that argument. Although failure to object at trial "frequently will indicate" that there was no constitutional violation, under the circumstances of this case, we conclude that the failure to object is not fatal to the defendant's claim. See *Jenkins* v. *Artuz*, 294 F.3d 284, 295 (2d Cir. 2002).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.