STATE OF CONNECTICUT *v.* PEDRO S.[1]
(AC 24096)

Foti, DiPentima and Hennessy, Js.

[1] In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 20, 2004—officially released February 1, 2005

*Arnold V. Amore II*, special public defender, for the appellant (defendant).

*Theresa Anne Ferryman*, senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Pedro S., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2).[2] The defendant claims that (1) prosecutorial misconduct deprived him of a fair trial and (2) the evidence did not support the jury's verdict. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 24, 2001, the victim was thirteen years old. She lived in New Haven with her mother, an older sister and a younger brother. Her father, the defendant, was divorced from the victim's mother and lived in New London. The defendant routinely spent time with the victim away from her home and, on

---

[2] The jury acquitted the defendant of four other charges: Sexual assault in the first degree, sexual assault in the second degree, risk of injury to a child and sexual assault in the third degree. The trial court sentenced the defendant to serve a term of incarceration of ten years followed by ten years of special parole.

December 24, 2001, drove her and her brother to his apartment, where they stayed the night.

Sometime during the night, the victim, who was asleep on a sofa in the defendant's living room, awoke to discover the defendant touching her. The victim attempted to push the defendant away, but he did not leave her alone. The defendant pulled the victim's pants down and performed cunnilingus on her.[3] The victim kicked and struck the defendant in an effort to resist his assault. The defendant told the victim not to tell anyone what he had done. The defendant told the victim that she did not "want him to go to jail." As a result of the defendant's actions, the victim sustained, among other injuries, bruises on her legs. The defendant drove the victim and her brother home on December 25, 2001, and the victim reported the incident to her older sister and to her mother. The victim sought medical assistance at Yale-New Haven Hospital, where medical personnel examined her. The victim thereafter reported the incident to the New London police. The defendant's arrest followed. Additional facts will be set forth as necessary.

I

The defendant first claims that prosecutorial misconduct deprived him of a fair trial. The defendant concedes that he did not preserve his claim at trial. He argues that appellate review is warranted under (1) the plain error doctrine, codified in Practice Book § 60-5, (2) the doctrine enunciated in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or (3) the exercise of our supervisory powers. We will review the claim following the analytic approach set forth by our

---

[3] The defendant's conviction is related to that conduct. The state also alleged that the defendant engaged in penile-vaginal intercourse with the victim. The victim testified at trial that after the defendant performed cunnilingus on her, he "got on top" of her and partially inserted his penis inside of her vagina against her will. The jury acquitted the defendant of the charges related to that alleged conduct.

Supreme Court in *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). In *Stevenson*, our Supreme Court enunciated a new analytical approach to reviewing unpreserved claims of prosecutorial misconduct. The court held that "following a determination that prosecutorial misconduct has occurred, regardless of whether it was objected to, an appellate court must apply the . . . factors [set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] to the entire trial." *State* v. *Stevenson*, supra, 575. The defendant's claim is based on arguments advanced by the prosecutor during closing argument. Before we review the challenged remarks, we set forth our standard of review.

Prosecutorial misconduct claims invoke a two step analysis. First, the reviewing court must determine whether the challenged conduct did, in fact, constitute misconduct. Second, if misconduct occurred, the reviewing court must then determine if the defendant has demonstrated substantial prejudice. *State* v. *Singh*, 259 Conn. 693, 699, 793 A.2d 226 (2002). "In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) Id., 699–700.

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process [a reviewing court should focus] on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams*, supra, 204 Conn. 540. Additionally, a reviewing court must consider whether the defendant objected,

requested a curative instruction to the jury or moved for a mistrial on the basis of the misconduct. See *State* v. *Rowe*, 85 Conn. App. 563, 574–75, 858 A.2d 792, cert. granted on other grounds, 272 Conn. 906, 863 A.2d 699 (2004).

A

The defendant claims that the prosecutor committed misconduct in that she expressed her personal opinion concerning the victim's credibility. The remarks of which the defendant complains follow.

During her closing argument, the prosecutor discussed the charges against the defendant and then argued in relevant part as follows: "If you accept [the victim's] testimony beyond a reasonable doubt, you will find that the state has proven these charges. The elements are really not what's at issue here. What's at issue here is credibility. This is a credibility case. It's all about whose testimony you accept and whether you accept it beyond a reasonable doubt. The state's case rests squarely on the shoulders of [the victim], and that's really not a bad place to start, from the state's point of view. [The victim] is a fourteen year old girl from New Haven, comes here to a strange court in Norwich and under oath—not a small thing—under oath testifies that [the defendant] had intercourse with her during a Christmas visit in 2001 in the city of New London. That's not an easy thing to do. That's not a pleasant thing to do. I can think of, and I know you can think of, many other things a fourteen year old girl would [want] to do on any given day. So, that's the starting point.

"Add to that the fact that her testimony has what we refer to as hallmarks of credibility, which is just a fancy way of saying that within that testimony, there are many signs of truthfulness, many signs of reliability. And I'm going over some of those with you, and I'd ask you

to consider them when you think about [the victim's] testimony. The first thing I'd ask you to think about is consistency. [The victim] has been consistent from the very first day she returned to her mother's home and indicated that her father had sexually assaulted her. She has always said that the sexual assault consisted of a brief moment where he put his mouth on her vagina and a second encounter, moments later, where he inserted his penis into her vagina, very minimally, she says, very minimally, but that would be enough under our statute.

"She has been consistent in her interviews then with Florence Mackey.[4] She has been consistent in her interview with Janet Murphy.[5] She has been consistent here in court. She said [that] those are the things that happened. She didn't add to them. She didn't include one type of sexual contact in one interview and then have another type in a different interview. She was consistent and clear on the [witness] stand. She never pretended to remember things she didn't remember, and so I'd ask you to consider that consistency when you think about her testimony. And I'm going to really ask you to think about it when you compare it to the defendant's testimony . . . ."

The prosecutor later argued as follows: "Another important thing, I think, when you think about her testimony, is that there was no exaggeration. [The victim] didn't pretend to remember things if she didn't. She didn't claim to know what ejaculation was. She just said she didn't feel any wetness on her in the incident. She didn't say he had penetrated her for a long amount of time very deeply. She just described what happened

---

[4] At trial, the state elicited testimony from Mackey, a social worker employed at the child sexual abuse clinic at Yale-New Haven Hospital.

[5] At trial, the state elicited testimony from Murphy, a pediatric nurse practitioner employed by Yale-New Haven Hospital in its child sexual abuse evaluation program.

to her. She didn't try to fill in the blanks." The prosecutor also argued: "[The victim] is an accurate reporter. She is a reporter without any motivation. She is a reporter without an agenda, and she's a reporter with absolutely nothing to gain here at all."

The defendant argues that the prosecutor expressed her personal opinion concerning the victim's credibility. The law circumscribes the prosecutor's leeway in commenting on the credibility of witnesses. "It is well settled that [a] prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses . . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions. . . . The prosecutor may, however, argue to the jury that the *evidence* and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses." (Emphasis in original; internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 287, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

Having reviewed the challenged remarks, we conclude that they do not constitute prosecutorial misconduct. It was not improper for the prosecutor to argue that her case rested on the victim's testimony and to comment on the strength of that testimony. The issue is whether the prosecutor injected a personal opinion about the victim's credibility into the argument or if the argument was grounded in a discussion of the evidence presented at trial. Here, the argument reflects that the prosecutor discussed the victim's credibility by inviting

the jury to consider "signs" of truthfulness and reliability.

The prosecutor clearly argued that the victim was consistent, that she did not exaggerate her account of what had occurred, that she was "an accurate reporter" and that she had "nothing to gain" from testifying. The prosecutor argued that the victim's testimony had "hallmarks of credibility," but she did not cross the line into improper argument by stating that she believed that the victim had testified truthfully. The prosecutor couched her argument in terms of suggesting how the jury might evaluate the victim's testimony and did not personally guarantee the victim's credibility or imply that she had knowledge of the victim's credibility outside of the record. For those reasons, we reject the defendant's claim that the prosecutor improperly commented on the victim's credibility.[6]

B

The defendant claims that the prosecutor committed misconduct during her closing argument by referring to facts that were not in evidence. The claim is based on the prosecutor's reference to a letter received by the defendant from the department of children and families (department) concerning the allegation of sexual abuse by the victim.

The record reflects that the defendant testified at trial concerning the statement that he gave to Officer

---

[6] The defendant also takes issue with the following argument by the prosecutor: "Take [the victim's] testimony. Her testimony alone proves the state's case. Her testimony alone can make that beyond a reasonable doubt standard." The defendant does not state why that argument is improper except to claim that "[t]he prosecutor [made] no mention of the elements of any specific Connecticut general statute that the testimony proved." The prosecutor's argument was not improper on its face and, viewing the argument in its context, we conclude that it does not reflect an attempt by the prosecutor either to invade the jury's fact-finding function or to dilute the state's burden of proof.

Robert Pickett of the New London police department subsequent to being arrested in February, 2002. The statement was the topic of examination by both the defense and the state. It suffices to state that the prosecutor attempted to demonstrate that the defendant's statement was inaccurate and inconsistent. During direct examination, the defendant testified concerning the circumstances under which he gave the statement to the police. Specifically, he testified that he was nervous and that he did not have a "clue" about the nature of the charges against him. The defendant testified that he had "no idea" that the victim was going to accuse him of any crime. On cross-examination by the state, the defendant testified that he had, in fact, "heard about" the allegation that the victim had been abused, albeit not by him, from his former wife and the department. The prosecutor inquired about the defendant's assertion that he had learned about the incident from the department. The defendant testified that before his arrest, the department had sent him a letter concerning the incident with the victim. The letter set forth findings related to the incident, and the defendant testified that he took steps to appeal from the findings made by the department. Following that testimony, the defendant reiterated his previous testimony that at the time of his arrest, he had "no idea" what the basis was for his arrest.

The defendant later testified during cross-examination by the state that the letter he had received from the department stated that an allegation of child abuse had been substantiated against him. The defendant testified that the letter indicated that the allegation of child abuse concerned the victim. He testified that he brought the letter to his probation officer and took steps in the presence of his probation officer to appeal from the department's findings. The defendant reiterated that despite having received this letter from the department, he was confused about the charges against him at the

time of his arrest and that this confusion helped explain aspects of his statement that were inaccurate or inconsistent.

During her closing argument, the prosecutor argued that the defendant's assertion that he "had no idea what he was being charged with" was "ridiculous." The prosecutor sought to discredit the defendant's testimony in that regard by discussing evidence that he knew about the allegation of sexual abuse against him from both his former wife and from the department's letter. The prosecutor argued in relevant part: "He receives a letter from the department of children and families telling him he has been substantiated as a perpetrator of sexual abuse and that he has the right to appeal, and he takes that to his probation officer and he elects to appeal. He—and this all happens before Officer Pickett comes to him. And he still wants you to believe that when Officer Pickett came to him, it was an absolute surprise that he was being charged with something that occurred that Christmas Eve, that he was being charged with a sexual assault. That is not believable.

"[The defendant] has some familiarity with the criminal justice system. He knew enough to appeal that finding [by the department]. He knew that whatever—and substantiation is a word that is not always used in daily life. I agree. That's true. But appeal is a word that he knows, and he knew to appeal that finding because he knew it was a negative finding against him that had to do with the reported sexual abuse of [the victim]. So, when Officer Pickett comes to [the defendant's] workplace, he's aware, he knows what the charges [are], he knows some agency has already found that it happened, and he's ready, and he's ready to give a statement, and he gives a statement that he believes will exculpate him, and will avoid this matter going any further . . . ."

The defendant now argues that the prosecutor's reference to the department's letter during closing argument

was improper. The defendant points out that the letter was not admitted into evidence and that the prosecutor improperly referred to the contents of the letter, specifically, that the department had "substantiated" the claim of sexual abuse against him.

"Our decisional law on prosecutorial misconduct makes clear that as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts *in evidence* and the reasonable inferences to be drawn therefrom." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ritrovato*, 85 Conn. App. 575, 596, 858 A.2d 296, cert. granted on other grounds, 272 Conn. 905, 863 A.2d 699 (2004).

The record clearly reflects that the defendant, himself, brought up the letter in his testimony. The prosecutor inquired about the letter absent any objection by the defense, and the defendant does not now claim that the inquiry was improper. The defendant agreed that the department indicated in the letter that the claim of sexual abuse against the victim had been substantiated. It is of no consequence that the letter itself was not admitted into evidence because, in her argument, the prosecutor referred only to the defendant's testimony concerning the letter and the inference that the jury should draw from that testimony. The prosecutor confined her argument to matters in evidence. Further, the prosecutor did not improperly argue that the department's findings in the letter proved the state's case. Instead, she argued that the defendant's testimony with regard to the letter, that the department had determined that the allegation of sexual abuse by him against the victim was substantiated, discredited the defendant's testimony that he was confused and unaware of the allegations against him at the time he gave his statement to the police. Stated otherwise, the prosecutor referred to the defendant's testimony about the letter for the

purpose of discrediting the defendant's assertion that the misstatements in his statement to the police were reasonable under the circumstances.

The prosecutor's argument constituted fair commentary on the evidence adduced during trial. Accordingly, the defendant's claim of prosecutorial misconduct fails.

## C

The defendant also argues that the prosecutor improperly characterized his testimony and statement to the police as untrue. The defendant cites the following specific remarks in support of his claim.

The prosecutor stated: "The defendant could have remained silent. That is his right. The state has to prove this case on its own. But having testified, he is not entitled to any special protection. His testimony needs to be evaluated the same way as anyone else's, and his testimony is inconsistent. It is not candid. It is not clear. It is not credible. I'm not going to—if I spent the morning going over the inconsistencies in the defendant's testimony, we would be here all day. There is just so much ample room there to talk about it."

The prosecutor then discussed the evidence, referring to what she deemed were "glaring" examples of the defendant's lack of truthfulness. The prosecutor attempted to discredit the defendant's testimony that he was confused about the charges against him at the time that he gave his statement to the police. The prosecutor referred to evidence of what the defendant knew about the victim's allegations at the time of his arrest and characterized his testimony that he was surprised at the charges as "not believable."

At another point in her argument, the prosecutor attempted to discredit the defendant by referring to his admittedly inaccurate statement to the police, in which he represented that his girlfriend was with him during

the night in question, and that the victim and her brother had slept in another room in his apartment. The prosecutor referred to the statement and the defendant's explanation for the fact that the statement was not accurate. She stated: "He claims that he was confused about that statement. That statement was taken only about seven weeks after the incident. It was taken after he had been alerted that there was a problem, after [the department] had alerted him. He was ready to give that statement. He was not confused at all. He deliberately gave that false statement in order to give himself—alibi's the wrong word—in order to give him a person that would support his contention that it didn't happen."

The prosecutor then argued: "So, what's my point? If the point of this trial was to prove that the defendant is an untruthful person, I'd just sit down right [now] because that's out there, and that's clear. But . . . that's not the charge. The charge here is the sexual assault on [the victim]. And so how does this untruthfulness relate to that charge? And the way it relates . . . is this. You can find when somebody tells lies, untruths about important matters, that they're doing that for a reason, that they're doing that to hide what really happened. And I would suggest to you in this case, that's exactly what's going on here. The concept is called consciousness of guilt. It's not really important to put a label on it, but it's what we all know from our common sense happens. When you're in trouble, make up a story to get yourself out of it. And that's what happened. Unfortunately, the story got so complicated, and the lies became so layered, that he kind of got himself jammed up. And he even confused—I know he confused me. . . . [H]e may have confused all of you in the end. But the most important thing here is that he lied in that statement that he gave to Officer Pickett."

The defendant also challenges statements made by the prosecutor during the state's rebuttal argument.

The prosecutor attempted to discredit the defendant's testimony and argued as follows: "I would love to believe that I was the source of the defendant's confusion and intimidation [on the witness stand], that I somehow outlawyered up here and he was terrified of me, and—and in his terror of me, he continued to give false statements on the [witness] stand. I don't buy that. I don't think you have to buy that. This is a man who's very well acquainted with the system, from his own testimony. He has had many encounters with the New Haven police department, apparently. He told—he testified as he did up here because he felt it was advantageous. He wasn't good at it. I'm not saying he was good at it, but he was trying.

"[T]he state isn't arguing that he formulated some grand plot and tried to engage everybody in it when he gave that statement to Officer Pickett. What the state is saying is, he knew he had to have somebody there [in his apartment with him on the night in question], and he stuck [his girlfriend] there, and it just didn't work. [His girlfriend] didn't say that she was there.[7] When I say he tells untruths or he lies, I'm not saying he's a good liar. He seems to be relatively inept at it. But that's not what it's about. It's about what his motivation is. Why do you go to those lengths? You go to those lengths to hide what you did. It's because you're conscious of your own guilt, and you're trying to avoid responsibility for it."

The prosecutor also stated: "[T]he defendant's familiar with the system. He knows what was at stake when he was interviewed by Officer Pickett. He lied because

---

[7] In his statement to the police, the defendant represented that on the night in question, his then girlfriend stayed with him at his apartment and that on the following morning, she had taken the victim out shopping. The state called the defendant's girlfriend as a witness, and she testified that on the night in question, she was not at the defendant's apartment and that she had not taken the victim shopping the following morning.

he . . . knew he was guilty." In referring again to the representation in the defendant's statement to the police that his girlfriend was with him on the night in question, the prosecutor stated: "The defendant gave a false statement because he knew he needed somebody to be there, and that's all. . . . [I]t wasn't a grand plot, and I'm not arguing it was some scheme he had. And what he did here was to attempt to confuse the evidence, and I was confused, but to confuse the evidence so that you didn't string together this series . . . of events which was in the evidence." The prosecutor concluded the state's rebuttal argument by characterizing the defendant's statement to the police as "false" and reminding jurors to consider the defendant's "lack of candor" when considering his testimony. The prosecutor then argued: "Weigh everything you've heard and use your common sense. It is . . . in the state's best interest for you to use that common sense. It's a tough call. It's a call about credibility. All of you said you can do it, and we all have confidence that you can."

The defendant now argues that the foregoing statements by the prosecutor were a "brazen attack on [his] testimony" and constituted misconduct. Specifically, the defendant cites the fact that the prosecutor repeatedly referred to him as a "liar."

There is no rule that precludes a prosecutor from challenging a defendant's testimony. The issue is whether the prosecutor's argument took the form of a fair criticism of a defendant's credibility on the basis of the evidence or if it reflected merely the prosecutor's personal opinion of the defendant's credibility. See *State* v. *Morgan*, supra, 70 Conn. App. 287. Having reviewed the challenged remarks, we conclude that they were based on the evidence and not on the prosecutor's personal opinion. The prosecutor prefaced her remarks by reminding the jury that it had to evaluate the defendant's testimony and asked the jury to weigh

the evidence by using common sense. The prosecutor referred to the defendant's statement to the police and invited the jury to infer that the statement was inaccurate because the defendant had a motive to lie, that he had fabricated a story to conceal his guilt. Because the prosecutor based her comments on the evidence and asked the jury to use its common sense in evaluating the evidence in light of the defendant's likely motives, the argument was proper. "Our jurisprudence instructs that a prosecutor may comment on a witness' motivation to be truthful or to lie." *State* v. *Holliday*, 85 Conn. App. 242, 261, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004).

The prosecutor drew the conclusion that the defendant's statement to the police, as well as his testimony concerning what he knew about the charges against him at the time he made the statement, demonstrated that he was a liar. The prosecutor asked the jury to conclude likewise. The prosecutor's submission concerning the defendant's credibility was fair in light of the testimony of other witnesses that contradicted the defendant's statement and his testimony. The defendant's testimony concerning what he knew about the victim's complaint against him was, in itself, contradictory and the basis for a fair criticism of the defendant's credibility. "[E]ven though it is unprofessional, a prosecutor can argue that a defendant is a 'liar' if such an argument is supported by the evidence." *State* v. *Spyke*, 68 Conn. App. 97, 113, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002); see also *State* v. *Wickes*, 72 Conn. App. 380, 388, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002).

This court has often observed that closing arguments have a "rough and tumble quality about them" and that generous leeway must be afforded to counsel in stating their case to the jury. (Internal quotation marks omitted.) *State* v. *Tate*, 85 Conn. App. 365, 370, 857 A.2d

394, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). Although it would have been better practice for the prosecutor to have avoided characterizing the defendant as a "liar,"[8] he has not demonstrated that the prosecutor committed misconduct.

## II

The defendant also claims that the evidence did not support the jury's verdict as to any of the four crimes of which he was convicted. The defendant moved for a judgment of acquittal at the close of the state's case and renewed his motion prior to sentencing. The defendant claims that the court improperly denied those motions.[9] According to the defendant, the evidence was insufficient because "other than the testimony of [the victim], there was no physical evidence presented of

[8] After the prosecutor concluded the state's rebuttal argument, the court addressed counsel outside of the presence of the jury. The court stated in relevant part: "[D]uring its second argument, the state indicated that the defendant was a liar and said that he lied or words to that effect." The court then asked if the defendant wanted the court to give the jury a curative instruction concerning that argument. The defendant's attorney responded affirmatively. The prosecutor indicated that she did not want to be heard on the issue, except to indicate that she made such comments "in the heat of the moment . . . ." After the jury returned to the courtroom, the court instructed as follows: "During [her] closing argument, the prosecutor indicated that, I think words to the effect that the defendant—referred to the defendant as a liar or said that he lied or words to that effect. Disregard those arguments. It's your decision, and your decision alone as to the credibility of all witnesses, including the defendant. So, disregard those arguments by the prosecutor. Okay."

[9] The defendant properly argues that he preserved his claim. The defendant, however, seeks review under the plain error doctrine. The defendant's request for review under the plain error doctrine is flawed for two reasons. First, the plain error doctrine applies to unpreserved claims. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error *not brought to the attention of the trial court.* . . ." (Emphasis added.) Practice Book § 60-5. Second, even if the defendant at trial had not challenged the sufficiency of the evidence, we would nonetheless review his claim because it "implicate[s] a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Morgan,* supra, 70 Conn. App. 281.

any sexual assault." The defendant argues that several witnesses testified on behalf of the state, but that "[n]ot one of these witnesses made any finding of trauma, blood and tissue or could testify that there were any positive results from the rape kit that was performed at Yale-New Haven Hospital on December 25, 2001."

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 52, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). We have reviewed the record and conclude that the evidence supports the verdict beyond a reasonable doubt and that the jury reasonably could have relied on that evidence in returning the verdict that it did. The defendant's claim is based solely on the flawed premise that the state bore the burden of proving its case with physical evidence. The victim's testimony provided a sufficient evidentiary basis for the conviction.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.

DiPENTIMA, J., concurring. I respectfully concur with the result the majority has reached and write separately only to address the prosecutor's depiction of the defendant, Pedro S., as a liar during closing argument

to the jury.[1] The defendant contends that such characterization was improper, and I agree.

As the majority recognizes, we are required to engage in a two step analytical process when reviewing claims of prosecutorial misconduct. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." *State* v. *Ceballos*, 266 Conn. 364, 381–82 n.29, 832 A.2d 14 (2003).

The majority notes that our case law currently instructs that "even though it is unprofessional, a prosecutor can argue that a defendant is a 'liar' if such an argument is supported by the evidence." *State* v. *Spyke*, 68 Conn. App. 97, 113, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002); see also *State* v. *Wickes*, 72 Conn. App. 380, 388, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002). The sole support offered in *Spyke* for this proposition of law is a citation to *State* v. *Oehman*, 212 Conn. 325, 334, 562 A.2d 493 (1989).

In *Oehman*, the defendant claimed that statements made by the prosecutor characterizing the defendant as, inter alia, a "liar" constituted prosecutorial misconduct. Id., 333. Our Supreme Court stated that "[a]lthough such invective is wholly unprofessional and has no place in a Connecticut courtroom, we conclude that the [comment] by the prosecutor characterizing the defendant as a liar . . . [was] supported by the evidence presented in this case. The jurors heard the defendant

---

[1] See part I C of the majority opinion.

testify concerning numerous lies he had told to various persons both before and after the death of the victim. In this situation, it was certainly permissible for the jurors to infer, and for the prosecutor to argue, that the defendant's *prior lies* were relevant to the credibility of his testimony at trial." (Emphasis added.) Id., 334. I read that holding to indicate that a prosecutor may argue that a particular statement made by the defendant is a lie, if supported by the evidence. There is a significant distinction, however, between arguing that a particular statement is a falsehood on one hand and arguing that the defendant "is a liar" on the other.[2] When a prosecutor brands a defendant a "liar," the line is crossed between proper and improper comment.[3] See Rules of Professional Conduct 3.4 (5).

It appears that this court has followed two divergent paths on this issue. Although we have indicated that a prosecutor may argue that a defendant is a "liar" if such an argument is supported by the evidence; see *State* v. *Spyke*, supra, 68 Conn. App. 113; *State* v. *Wickes*, supra, 72 Conn. App. 388; we have also held that such argument constitutes misconduct. In *State* v. *Floyd*, 10 Conn. App. 361, 367–68, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987), despite the fact that "the defendant's statements to the police prior to trial conflicted with the evidence presented at trial by the police and

[2] Our Supreme Court has noted the "distinction between using the words wrong or mistaken rather than lying in questions and closing arguments, concluding that the former terms are not improper because they merely [highlight] the objective conflict without requiring [one] to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a liar." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 706–707, 793 A.2d 226 (2002).

[3] Cf. *State* v. *Moran*, 99 Conn. 115, 121, 121 A. 277 (1923), in which the prosecutor, referring to the defendant, declared that " '[h]e sits there as a perjurer upon that [witness] stand.' " The court concluded that the statement was prejudicial and inexcusable. Id.

even the defendant's alibi witnesses," we stated that the use of the word "liar" to refer to the defendant was something we could not condone. Viewing the trial as a whole, however, we concluded that this impropriety "did not deny the defendant a fair trial." Id., 368. As recently as 2003, we concluded that a prosecutor's use of the epithet "liar" to describe a defendant was improper. In *State* v. *Hilton*, 79 Conn. App. 155, 169, 829 A.2d 890 (2003), we held that the prosecutor's comments characterizing the defendant as a liar "certainly were improper and not in any way consistent with the expectation of professionalism of his office." Nevertheless, we concluded that because "the prosecutor coupled his substantially accurate characterization of the evidence with the suggestion that the jury closely examine the evidence for itself, we cannot say that his misconduct in the use of the word 'liar' deprived the defendant of a fair trial." Id., 169–70. Thus, in both *Floyd* and *Hilton*, this court concluded that the prosecutor's use of the epithet "liar" to describe the defendant was misconduct that did not amount to a deprivation of a fair trial.

In the present case, I would likewise conclude that the prosecutor's depiction of the defendant as a liar constituted misconduct. Particularly noteworthy is the fact that immediately following the prosecutor's rebuttal argument, the court inquired whether the defendant wanted the court to give the jury a curative instruction as to the prosecutor's depiction of him as a liar. Equally telling is the prosecutor's response, in which she indicated that such comments were made "in the heat of the moment . . . ." The court thereafter provided a curative instruction to the jury. See footnote 8 of the majority opinion.

Nevertheless, in applying the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987),[4]

---

[4] The *Williams* factors are: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the misconduct;

to the entire trial, as required under *State* v. *Stevenson*, 269 Conn. 563, 849 A.2d 626 (2004),[5] I would conclude that this misconduct did not deprive the defendant of a fair trial. Because the defendant's testimony at trial contradicted his written statement to the police on February 23, 2002, as well as his testimony on cross-examination, the misconduct was, to a degree, invited. The severity of the misconduct was minimized by the supporting evidence presented at trial and was infrequent and limited to closing argument. Furthermore, the defendant did not object to the misconduct. In *Stevenson*, our Supreme Court insisted that "the fact that defense counsel did not object to one or more incidents of misconduct *must be considered* in determining whether and to what extent the misconduct contributed to depriving the defendant of a fair trial and whether, therefore, reversal is warranted." (Emphasis added.) Id., 576. "Where counsel does not request a curative instruction or seek a mistrial, he presumably does not view the remarks as so prejudicial that his client's right to a fair trial is seriously jeopardized." (Internal quotation marks omitted.) *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985). Finally, the trial court, sua sponte, provided a curative instruction regarding the misconduct, which likely minimized any harm that may have resulted from the prosecutor's misconduct. Our Supreme Court has "often held that a prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant." (Internal quotation marks omitted.) *State* v. *Reid*, 193

(3) the frequency of the misconduct; (4) the centrality of the misconduct to the critical issues in the case; (5) the strength of the curative measures adopted; and (6) the strength of the state's case. *State* v. *Williams*, supra, 204 Conn. 540.

[5] I would note that our decisions in *State* v. *Hilton*, supra, 79 Conn. App. 155, *State* v. *Wickes*, supra, 72 Conn. App. 380, *State* v. *Spyke*, supra, 68 Conn. App. 97, and *State* v. *Floyd*, supra, 10 Conn. App. 361, all preceded *State* v. *Stevenson*, supra, 269 Conn. 563, and *State* v. *Ceballos*, supra, 266 Conn. 364.

Conn. 646, 666, 480 A.2d 463 (1984). Accordingly, I would conclude that although the prosecutor's use of the epithet "liar" to describe the defendant was unprofessional and constituted misconduct, it did not deprive the defendant of a fair trial.