STATE OF CONNECTICUT *v.* SHAUN ROWE
(SC 17322)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued March 14—officially released July 18, 2006

*Julia K. Conlin,* assistant state's attorney, with whom were *Kevin Doyle,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellant (state).

*Janice N. Wolf,* assistant public defender, with whom were *Suzanne Zitser,* assistant public defender, and, on the brief, *Richard Emanuel,* for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The defendant, Shaun Rowe, was convicted after a jury trial of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), larceny in the second degree in violation of General Statutes § 53a-123 (a) (3), carrying a pistol without a permit in violation of General Statutes § 29-35, and having a weapon in a motor vehicle in violation of General Statutes § 29-38. The trial court later found the defendant guilty of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1), and enhanced the defendant's sentence for having been found guilty of committing a class A, B or C felony with a firearm in violation of General Statutes § 53-202k. The principal issue in this appeal is whether the Appellate Court properly reversed the judgment of conviction on the ground of prosecutorial misconduct. We reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "At approximately 10:45 p.m. on April 30, 2001, the defendant and Antoine Odum went to the drive through window at the McDonald's restaurant on Whalley Avenue in New Haven. Odum was driving his vehicle, and the defendant was in the passenger seat. While the defendant and Odum were at the drive through window, the victim, Marquise Avery, parked his vehicle in the McDonald's parking lot and entered the restaurant. There were no

other cars in the parking lot when the victim arrived. After the defendant and Odum purchased food, they parked their vehicle in the parking spot next to the victim's vehicle. When the victim exited McDonald's, the defendant told the victim to 'come here.' The victim responded that he did not know the defendant. The defendant then pointed a handgun at the victim and cocked it. At that point, the victim approached the vehicle and was ordered to give the defendant the chain that he was wearing around his neck and to empty his pockets." *State* v. *Rowe*, 85 Conn. App. 563, 565, 858 A.2d 792 (2004).

The defendant appealed to the Appellate Court from the judgment of conviction, claiming that his due process right to a fair trial had been violated by the introduction of misleading consciousness of guilt evidence and by the prosecutor's improper comments. Id., 564–65. The Appellate Court agreed and reversed the judgment of the trial court. Id., 565. We granted the state's petition for certification limited to the following issue: "Did the Appellate Court properly reverse the defendant's conviction on the ground of prosecutorial misconduct?" *State* v. *Rowe*, 272 Conn. 906, 863 A.2d 699 (2004).

On appeal to this court, the state argues that (1) the Appellate Court improperly treated the defendant's unpreserved, unreviewable evidentiary claim regarding consciousness of guilt as a claim of prosecutorial misconduct, (2) even if the Appellate Court properly reviewed the defendant's consciousness of guilt claim, the prosecutor committed no prosecutorial misconduct with respect to this issue, (3) the prosecutor did not improperly comment on the defendant's failure to testify, and (4) even if the Appellate Court correctly determined that the prosecutor acted improperly, the defendant suffered no due process violation. The defendant counters that the Appellate Court properly rechar-

acterized the consciousness of guilt issue as an issue of prosecutorial misconduct stemming from the state's improper use of consciousness of guilt evidence, and properly reversed the defendant's conviction on that ground. The defendant further argues that the state violated his constitutional right to remain silent by commenting during closing arguments on the defendant's failure to testify. In addition, he urges this court to adopt a different standard for evaluating claims of prosecutorial misconduct, under which a finding of prosecutorial misconduct would require reversal of a criminal conviction unless the state could prove that the misconduct was harmless beyond a reasonable doubt. Finally, the defendant argues that this court should invoke its supervisory authority to reverse the defendant's conviction because the prosecutor deliberately engaged in conduct that he knew, or ought to have known, was improper.[1]

In its reply brief, the state counters that the prosecutor's remarks in closing argument were not improper and did not violate the defendant's right to due process, and that this court should not adopt a new rule requiring the state to prove that any instance of prosecutorial misconduct is harmless beyond a reasonable doubt. We conclude that the Appellate Court improperly treated the defendant's evidentiary claim concerning consciousness of guilt as a claim of prosecutorial misconduct and that the prosecution did not engage in any improper conduct. Accordingly, we reverse the judgment of the Appellate Court.

---

[1] The defendant filed a statement of alternate grounds for affirmance pursuant to Practice Book § 84-11. In that statement, the defendant raised the question of whether the Appellate Court's decision should be affirmed on the alternate ground that the admission of evidence relating to the defendant's consciousness of guilt was improper. The defendant appears to have abandoned this alternate ground because he does not address it in his brief.

I

We first address the state's claim that the Appellate Court improperly concluded that the prosecutor engaged in misconduct by arguing that the jury could infer consciousness of guilt from testimony pertaining to the defendant's flight because the defendant's claim properly should have been characterized as an unpreserved and unreviewable evidentiary claim, not a claim of prosecutorial misconduct. We agree.

The Appellate Court set forth the following additional facts and procedural history in its opinion. "During its case, the state called Odum [as a witness. Odum] had pleaded guilty to [robbery in connection with the April 30, 2001 incident] and was awaiting sentencing. Before the jury, the prosecutor first established that Odum knew the defendant. He then asked what Odum did with the defendant, and Odum testified that he sold drugs with him. Odum then testified that he was present in his vehicle on April 30, 2001, when the defendant robbed the victim at gunpoint. Odum also testified that he was driving that car on May 13, 2001, when he and the defendant, along with another individual, fled from the police.

"Prior to calling Odum, the prosecutor informed the court that he had instructed Odum that 'we weren't going to bring out on direct anything related to the arrest on May 13, 2001, when [Odum] was with this defendant, about the defendant having narcotics because that's not an issue before the court.' The prosecutor then added, 'if it's brought up on cross-examination, then I may follow up on it.'

"Before Odum's examination had begun, the state gave defense counsel a copy of Odum's statement to the police, which was marked for identification. In Odum's statement to the police, Odum stated that he fled from the police on May 13, 2001, because he was on proba-

tion, and the defendant, also on probation, was in possession of drugs.

"The state later called Officer David Rivera of the New Haven police department. Rivera testified that he was on patrol on the evening of May 13, 2001. . . . While examining Rivera, the prosecutor showed him a copy of his police report, which was not marked as an exhibit. The defendant objected to [Rivera's] testimony [for lack of foundation], arguing that there was no evidence regarding an incident occurring on May 13, 2001. The court overruled the defendant's objection. . . .

"Rivera then testified that he was on patrol on May 13, 2001, with two other officers. At approximately 11 p.m., Rivera observed a vehicle fail to obey a traffic signal. [When the officers pulled over the vehicle and approached it on foot] the vehicle sped off. . . . After traveling a short distance, the vehicle stopped, and the three individuals inside exited and ran in different directions.

"Rivera also testified that the officers pursued the individuals on foot. After chasing the driver for approximately two blocks, Rivera apprehended the defendant . . . . Odum was also in the vehicle, along with another individual. In his incident report, Rivera wrote that while chasing the defendant on foot, he observed the defendant throw a small bag to the ground. After the defendant was apprehended, Rivera retrieved the bag, in which were twenty-nine smaller bags containing a white rock-like substance that field tested as crack cocaine. . . .

"At the close of the evidence, the state filed a request to charge, and the court instructed the jury as to consciousness of guilt on the basis of the defendant's flight on May 13, 2001. In closing argument, the defendant argued that the robbery never occurred and that the victim . . . was lying. He also pointed out that Odum,

who had pleaded guilty to involvement in the robbery, hoped for leniency and probation because of his testimony.

"During closing argument and again during rebuttal argument, the prosecutor commented on the defendant's consciousness of guilt in relation to Rivera's testimony.[2] In its charge to the jury, the court instructed the jury on consciousness of guilt.[3] During its deliberation, the jury asked to have Rivera's testimony read back before returning a guilty verdict." *State* v. *Rowe*, supra, 85 Conn. App. 566–69.

On appeal to the Appellate Court, "[t]he defendant claim[ed] . . . that the consciousness of guilt evidence

[2] During closing argument, the prosecutor stated: "And remember the testimony of [Rivera], who stopped the defendant and [Odum] in a vehicle two weeks, almost two weeks after the robbery . . . sees the vehicle go through a red light, tried to effect a motor vehicle stop and the vehicle speeds off. Ultimately, he identifies this defendant getting out of the driver's side of the car and running and running fast, running away from the police. He was in a hurry to get out of the way.

"Remember what [Rivera] told you? As he chased him, making it clear, this is no mistake here, [Rivera], he wanted him to stop. He was chasing him, and [the defendant] tries to scale an eight to ten foot chain fence with barbed wire on the top and cuts his hand trying to get away from [Rivera].

"Why is he running? Two weeks after the robbery, he is in the same car he used in the robbery with one of the other individuals involved in the robbery.

"Listen to the judge's instructions about consciousness of guilt. Is it reasonable to infer that he knew he was guilty of the crime charged? You must decide that."

During rebuttal argument, the prosecutor stated: "[Rivera] told you he chased [the defendant], he identified [the defendant] and his birth date, and he had an injury to his hand trying to climb a barbed wire fence eight to ten feet high. Why is [the defendant] running if this robbery never occurred? Why is he running two weeks after the robbery when he is with [Odum]?"

[3] The trial court instructed the jury as follows: "I'm going to charge you on a concept known as consciousness of guilt. The law recognizes a principle known as consciousness of guilt. Certain conduct of a person may be considered by you to show his knowledge or consciousness of guilt. When a person is on trial for a criminal offense, it is proper to show conduct subsequent to the alleged criminal offense which may fairly have been influenced by that act."

was misleading and that the prosecutor's comments exacerbated its prejudice." Id., 569. He argued that, if the Appellate Court were to find that the claim was unpreserved, it was reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

In finding the claim reviewable, the Appellate Court reasoned that "[o]ur Supreme Court has held that it is unnecessary for a defendant to seek to prevail under the specific requirements of *Golding* in these circumstances. *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). The court explained: 'The reason for this is that the touchstone for appellate review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). As we stated in that case: In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense counsel or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength

---

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

of the curative measures adopted . . . and the strength of the state's case. . . .

" 'Regardless of whether the defendant has objected to an incident of misconduct, a reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial. The application of the *Williams* factors, therefore, is identical to the third and fourth prongs of *Golding*, namely, whether the constitutional violation exists, and whether it was harmful. . . . Requiring the application of both *Williams* and *Golding*, therefore, would lead, as in fact has occurred in the present case, to confusion and duplication of effort. Furthermore, the application of the *Golding* test to unchallenged incidents of misconduct tends to encourage analysis of each incident in isolation from one another. Because the inquiry must involve the entire trial, all incidents of misconduct must be viewed in relation to one another and within the context of the entire trial. The object of the inquiry before a reviewing court in claims involving prosecutorial misconduct, therefore, is always and only the fairness of the entire trial, and not the specific incidents of misconduct themselves. Application of the *Williams* factors provides for such an analysis, and the specific *Golding* test, therefore, is superfluous.' *State* v. *Stevenson*, supra, 269 Conn. 573–74." *State* v. *Rowe*, supra, 85 Conn. App. 569–70. The Appellate Court thus decided to "so review the defendant's claim to determine whether his due process right to a fair trial was violated." Id., 570.

The Appellate Court concluded that the prosecutor had engaged in misconduct. It reasoned that "the prosecutor repeatedly argued that the reason the defendant ran from the police on May 13, 2001, was because the car he and Odum were using on the night in question was the same car they used during the robbery two

weeks earlier." Id. The Appellate Court noted that "[t]he state [did] not cite any other evidence to support its claim that the defendant ran from [Rivera] because of the robbery." Id., 571. It stated that, although the defendant chose not to present evidence that he fled because of the drugs found when he was apprehended, the decision regarding whether to present such prejudicial evidence of drug possession to the jury or to withhold it at risk of leaving the inference of consciousness of guilt on behalf of the defendant regarding the robbery charge was a "Hobson's choice." Id., 571–72.

The Appellate Court concluded that "[t]he fourteenth amendment to the United States constitution requires that the state not misrepresent facts at a trial. *Miller* v. *Pate*, 386 U.S. 1, 7, 87 S. Ct. 785, 17 L. Ed. 2d 690 (1967). . . . The record . . . reflects that the prosecutor knew about the drugs, as well as Odum's reason for the flight when presenting the evidence of flight, and argued that the flight was a response to the robbery." *State* v. *Rowe*, supra, 85 Conn. App. 571–72.

On appeal to this court, the state claims that, in concluding that the prosecutor's actions were improper, "[t]he Appellate Court improperly transformed the defendant's unpreserved, and, therefore, unreviewable, evidentiary claim into one of prosecutorial misconduct, thereby according the meritless claim review." We agree.

We have long recognized that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Practice Book § 60-5; see, e.g., *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 82, 848 A.2d 395 (2004) (" '[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court' "); *PSE*

*Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 335, 838 A.2d 135 (2004) (because review is limited to matters in record, court will not address issues not decided by trial court). In addition, "[o]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005).

The case of *State* v. *Camera*, 81 Conn. App. 175, 186–89, 839 A.2d 613, cert. denied, 268 Conn. 910, 845 A.2d 412 (2004), is instructive on the specific issue before us. In *Camera*, the defendant was convicted of the crime of reckless assault in the first degree after he allegedly struck a victim in the head with a bottle. Id., 176–77. He claimed on appeal, inter alia, that "prosecutorial misconduct during his trial require[d] that he be granted a new trial. Specifically, he argue[d] that the prosecutor improperly used both cross-examination and summation to shift the burden of proof to the defendant and to mislead the jury into believing that the defendant had a duty to assert his innocence, thereby violating his due process right to a fair trial. He argue[d] that the prosecutor, during cross-examination, alluded to a duty on the defendant's part to initiate contact with the police and that failure to do so was evidence of culpability. The defendant contend[ed] that the prosecutor returned to that theme during summation, which the defendant maintains was sufficient in and of itself to have deprived him of a fair trial." Id., 186–87.

In *Camera*, the Appellate Court noted that "[i]n her closing argument, the prosecutor revisited the defendant's avoidance of the police, pointing out to the jury that the defendant left the scene of the assault rather than speak with the police or explain that the incident was an accident. The prosecutor also mentioned that

the defendant did not speak with the police until they contacted him, whereupon he explained that the incident was an accident." Id., 187. The defendant sought review under *Golding* because he had not objected to the prosecutor's remarks as prosecutorial misconduct before the trial court. Id., 187–88. The Appellate Court declined to review the claim because it agreed with the state's argument that "[t]he references made by the prosecutor to the defendant's departure from the scene before the police arrived and subsequent unwillingness to contact the police pertained to consciousness of guilt. Accordingly, the defendant's claim is actually premised on the propriety of the prosecutor's questioning on the subject of consciousness of guilt, rather than on alleged prosecutorial misconduct. In the context of this case, therefore, the defendant's claim must be considered evidentiary rather than constitutional in nature." Id., 188–89.

In the present case, the defendant objected at trial to the introduction of Rivera's testimony regarding the defendant's flight on May 13, 2001, by claiming that the state had failed to establish a proper foundation for the evidence. The trial court overruled the defendant's objection, and the prosecutor elicited the testimony. The defendant did *not* object to the testimony on the ground that it constituted improper evidence of consciousness of guilt. The prosecutor later submitted a jury charge on consciousness of guilt and the trial court instructed the jury accordingly. The prosecutor also commented on the reasons for the defendant's flight during closing arguments without objection by the defendant.

In this case, as in *Camera*, we agree with the state's characterization of the defendant's claim as an unpreserved evidentiary claim. When the trial court admitted Rivera's testimony regarding the defendant's flight on May 13, 2001, the defendant did not object that it was

improper evidence of consciousness of guilt. The defendant also failed to object to the state's closing argument about the defendant's flight or to the state's proposed jury instructions on consciousness of guilt. During argument, the prosecutor merely commented on evidence that the court explicitly allowed through Rivera's testimony. Arguing on the basis of evidence explicitly admitted for that purpose cannot constitute prosecutorial misconduct. Moreover, the defendant does not contend that a claim that the trial court improperly admitted consciousness of guilt evidence rises to the level of a constitutional claim that merits *Golding* review. See *State* v. *Schmidt*, 92 Conn. App. 665, 676–77, 886 A.2d 854 (2005) (consciousness of guilt claims are not constitutional and do not merit *Golding* review), cert. denied, 277 Conn. 908, 894 A.2d 989 (2006). Accordingly, we conclude that the defendant has no colorable claim of prosecutorial misconduct with regard to the prosecutor's comments about consciousness of guilt, and that the defendant's claim is an unreviewable evidentiary claim.

The defendant cites *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 322–23, 714 A.2d 1230 (1998), in support of his claim that the Appellate Court had the authority to characterize the defendant's consciousness of guilt claim as a claim of prosecutorial misconduct. In *Imperial Casualty & Indemnity Co.*, the plaintiff insurance company claimed that the defendants' argument that an insurance policy provided coverage for intentional acts was not reviewable because the defendants had conceded that issue in the trial court. Id., 318–19. We noted that "ordinarily, we . . . review a case on the theory upon which it was tried and decided in the trial court . . . and do not address on appeal issues that have not been raised in the trial court. . . . This practice is in accordance with Practice Book § 60-5 . . . ." (Citations omitted; internal quotation marks

omitted.) Id., 320. We further noted that "in exceptional circumstances, even claims not properly raised below will be considered. Generally, [s]uch exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. . . . *Berry* v. *Loiseau*, 223 Conn. 786, 828–29, 614 A.2d 414 (1992). In addition, in some instances we may overlook the procedural error and consider a question not properly raised below, not by reason of the appellant's right to have [the claim] determined but because, in our opinion, in the interest of the public welfare or of justice between the parties, the question ought to be considered. *Kavanewsky* v. *Zoning Board of Appeals*, 160 Conn. 397, 401, 279 A.2d 567 (1971)." (Internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, supra, 321.

In *Imperial Casualty & Indemnity Co.*, we reviewed the claim in the interests of justice for several reasons. Id., 322. First, we recognized that the interpretation of policy provisions in insurance contracts was a matter of law to be interpreted by this court de novo. Id. In addition, the defendants' argument pertained to the issue that had been decided by the trial court and the record as to that particular issue was complete. Id., 322–23. Finally, the parties had fully briefed the issue. Id., 323. As our appellate courts have noted, however, "[i]t has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the [standard of *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), as modified by *Golding*]." (Internal quotation marks omitted.) *State* v. *Lacks*, 58 Conn. App. 412, 424, 755 A.2d 254, cert. denied, 254 Conn. 919, 759 A.2d 1026 (2000); cf. *G. & H. Investment Co.* v. *Raymond*, 113 Conn. 778, 779, 155 A. 497 (1931) (abundant reason to

consider claim not raised in pleadings or proceedings below where, by oversight, judgment is contrary to plain language of written instruments that were basis of case); *Schmidt* v. *Manchester*, 92 Conn. 551, 555, 103 A. 654 (1918) (where applicable statute not brought to attention of court, statute could be raised on appeal because " '[e]rrors arising from the absence of actual knowledge . . . are always the subject of review' "); *Suarez-Negrete* v. *Trotta*, 47 Conn. App. 517, 522, 705 A.2d 215 (1998) (" 'Connecticut courts have concluded that the misapplication of a statute' " may be raised for first time on appeal). We conclude in the present case that the defendant's claim of prosecutorial misconduct does not rise to the level of such exceptional circumstances.

II

The state also claims that the Appellate Court improperly concluded that the prosecutor's comments on the defendant's failure to testify violated his constitutional rights to remain silent, to due process of law, and to a fair trial. We agree.

The following additional facts and procedural history are relevant to this claim. The defendant did not testify at trial. In closing argument, the prosecutor, in discussing the charges against the defendant, stated: "Beginning first with second degree larceny, which is the second count of the information. . . . The first element that the state must prove is that there has been a wrongful taking. *And it's clear from the testimony of both [the victim] and [Odum], the two people present that night, that there was a wrongful taking.* [The victim] just didn't give that chain and have someone hold on to it or borrow it. It wasn't a gift from [the victim]. He gave it when he heard the cocking of the gun . . . ." (Emphasis added.) The prosecutor further remarked: "Again, you have the testimony of both

[Odum] and [the victim], that there was a wrongful taking in front of that McDonald's." Later, the prosecutor argued that "[t]he next element for you to consider is whether the state has proven beyond a reasonable doubt that the defendant . . . displayed a pistol. Clearly, he displayed a pistol that night. *The two people there said he displayed a pistol.* [Odum], and he has known him for some period of time . . . was surprised when that gun came out because he had never seen the defendant with a gun before that." (Emphasis added.) In addition, while addressing the state's charge that the defendant illegally had a weapon in the vehicle, the prosecutor told the jury that the first element was that the weapon "has to be a pistol. The judge will tell you that a pistol is a gun with a barrel less than twelve inches. How do you know it's less than twelve inches? *The testimony of two [of] three people present.* [The victim], one to one and a half feet away from the gun, looking at it . . . . But you have the testimony of the operator of the blue vehicle that was parked next to [the victim] that night, the person in the car with this defendant, he told you he thought the gun was either a nine millimeter or a .45 [caliber weapon], about seven inches in length . . . . It's a pistol under the definition of the law." (Emphasis added.)

During her closing arguments, defense counsel brought to the jury's attention inconsistencies between the testimony of Odum and the victim, called them "two convicted felons" whose "stories didn't add up," and asserted that the two had colluded to implicate the defendant. Defense counsel also asserted that Odum was "high as a kite" on the night of the robbery. She said that the state had not "prove[d] anything," and stated: "I don't believe there was even a robbery."

During rebuttal, the prosecutor stated that although the testimony of one witness would have been sufficient, if believed, for the jury to find the defendant

guilty, the jury had the testimony of "two, two that corroborate, two that confirm each other. It's not just one." The prosecutor further argued to the jury that, in considering inconsistencies regarding the witnesses' testimony, "[w]hat [the victim] testified was that this happened at about 10:45 [p.m.], near closing time. [Odum] told you it was between 10:30 and 11, near closing time. The most important thing they all agree on is near closing time. *And there were basically only three people in the parking lot when [the robbery] happened. Three people present, and two of the three told you what happened.* The fact that there was a dispute about the nature of the lighting doesn't take away from the fact that the two people that were within five feet away identified this defendant as the person with the gun." (Emphasis added.)

Defense counsel did not object to the statements made during the prosecutor's initial closing argument, but requested a mistrial after the rebuttal argument. The trial court denied the motion and stated: "I don't know that it takes anybody to point out to the jury that there were three people and only two testified, so, [the prosecutor] stated what indeed was the fact here." The court did, however, offer to "expand upon [its] charge with respect to the defendant's right not to testify, and make specific reference to the state's argument . . . ." The defendant declined the offer. In its instructions to the jury regarding the defendant's failure to testify, the court charged the jury that "the defendant has not testified in this case. And an accused person has the option to testify or not testify at trial. He is under no obligation to testify. He has a constitutional right not to testify. You must draw no unfavorable inferences from the fact that the defendant did not testify."

The defendant filed a motion for a new trial following the jury's guilty verdict but prior to sentencing, which the trial court denied for the same reasons that it had

denied the defendant's motion for a mistrial. The court noted that it had offered "to expand upon the charge to the jury concerning the defendant's right not to testify because of [defense counsel's] concerns . . . [but defense counsel and the defendant] elected not to take advantage of that. Now . . . I could understand why you . . . might choose not to do that, so as not to call undue attention to that particular aspect, but that offer was made and the jury was instructed concerning the defendant's right not to testify." The court also noted that the jurors had indicated during voir dire that they would not hold the defendant's failure to testify against him, and that, in the court's view, "the state did have a strong case. I think that overall putting that comment in the context of the overall trial, and the evidence that has been produced and the arguments of counsel, I don't believe that it's been established that any comment such as that, even if it were deemed improper, played a part in the outcome of the trial."

On appeal, when the defendant challenged the prosecutor's remark made during rebuttal, the Appellate Court concluded that "the [prosecutor's] remark was improper because it directly and negatively referred to the defendant's failure to testify. See *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *State* v. *Parrott*, 262 Conn. 276, 292–94, 811 A.2d 705 (2003). The jury would naturally and necessarily take the remark to be a comment on the failure of the defendant to testify. See *State* v. *Rizzo*, 266 Conn. 171, 270, 833 A.2d 363 (2003)." *State* v. *Rowe*, supra, 85 Conn. App. 572. On appeal to this court, the defendant also seeks review under *State* v. *Williams*, supra, 204 Conn. 535–40, of its claim that the prosecutor's remarks during his initial closing argument were improper. We conclude that none of the prosecutor's remarks was improper and, therefore, that the defendant cannot prevail under *Williams*.

"Before addressing the merits of the defendant's claim, we first review the principles that govern our resolution of claims of prosecutorial misconduct. [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [M]oreover . . . [a defendant is not entitled to prevail under *Golding*] whe[n] the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial misconduct] we must view the prosecutor's comments in the context of the entire trial. . . .

"As we previously have recognized, prosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however] [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court,

like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 236–37, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

"[W]hile [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger* v. *United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935).

"[T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin* v. *California*, supra, 380 U.S. 615; see

also General Statutes § 54-84.[5] We have recognized that "the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . We regard[ed] the challenged remark as a comment by the prosecutor on the overall quality of the defendant's evidence and not as calling specific attention to the failure of the accused to testify. . . . The accused, by his failure to testify, cannot insulate himself from general comment on the weakness of his case, even though his failure so to testify may be perceived by the jury as having contributed to the general weakness about which comment is made." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 173, 778 A.2d 955 (2001); *State* v. *Magnotti*, 198 Conn. 209, 220, 502 A.2d 404 (1985). "As we repeatedly have stated, [i]n determining whether a prosecutor's comments have encroached upon a defendant's [fifth amendment] right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Internal quotation marks omitted.) *State* v. *Lemon*, 248 Conn. 652, 659, 731 A.2d 271 (1999).

With regard to the prosecutor's comments during closing arguments, we conclude that they merely constituted proper statements in support and explanation of the state's case. The prosecutor's statement indicating

---

[5] General Statutes § 54-84 provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

that two out of the three people present during the May 13, 2001 incident had testified that the defendant had a pistol was neither manifestly intended to be, nor of such character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify. The prosecutor did not imply that the defendant's *silence* was evidence of his guilt, but only that the two eyewitnesses' statements were compelling evidence of his guilt. Accordingly, we conclude that the remarks were not improper.

With regard to the prosecutor's comments during rebuttal that three people were present in the parking lot, and that "two of the three told [the jury] what happened," we again conclude that the prosecutor did not improperly comment on the defendant's failure to testify. He made no explicit mention of the defendant's failure to testify and the trial court instructed the jury about the defendant's right not to testify. In light of the defendant's closing arguments that the state's witnesses lied and gave inconsistent testimony, the most reasonable interpretation of the prosecutor's remarks during rebuttal is that they were intended to rebut the defendant's closing arguments that the two witnesses' stories were inconsistent, that they both had lied, and that no crime had taken place. We agree with the trial court that, at most, the prosecutor simply stated what was obvious—that the jury had heard testimony from two of the three people present at the scene of the alleged crime. We are not persuaded that the state's comments shifted the burden of proof to the defendant or deprived the defendant of a fair trial.

Because we conclude that none of the prosecutor's remarks was improper, we need not consider whether the remarks amounted to a denial of due process under *State* v. *Williams*, supra, 204 Conn. 540. Nor do we need to address the defendant's argument that this court should adopt a different standard for evaluating claims

of prosecutorial misconduct or his claim that this court should invoke its supervisory authority to reverse the defendant's conviction on the ground that the prosecutor deliberately engaged in conduct that he knew, or ought to have known, was improper.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.