## STATE OF CONNECTICUT *v.* KENNETH A. GRAVES
### (AC 29905)

Flynn, C. J., and Gruendel and Peters, Js.

Argued March 9—officially released June 9, 2009

*Donald L. Williams*, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Peter A. McShane*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Kenneth A. Graves, appeals from the judgment of conviction, rendered following a jury trial, of reckless driving in violation of General Statutes § 14-222, failure to bring a motor vehicle to a full stop when signalled in violation of General Statutes § 14-223 (b), reckless endangerment in the first degree in violation of General Statutes § 53a-63, interfering with an officer in violation of General Statutes § 53a-167a and possession of four ounces or more of a cannabis type substance in violation of General Statutes § 21a-279 (b). On appeal, the defendant claims that the trial court improperly denied his pretrial motion to suppress evidence of a brown paper bag containing marijuana because it improperly (1) determined that a police officer was in "hot pursuit" of the defendant and therefore did not need a warrant to conduct a search, (2) concluded that the officer, a municipal police officer from Rhode Island, was permitted to conduct police activities in Connecticut and (3) failed to hold that the officer's search of an open field, which revealed the bag, was illegal because of the officer's out-of-state status and because no exigent circumstances were present. We affirm the judgment of the trial court.

The record reveals the following facts, which are necessary for our resolution of the defendant's appeal. On November 20, 2005, Officer David Whewell, a Rhode Island police officer trained in narcotics detection and highway drug interdiction, was on patrol in Hopkinton, Rhode Island. At approximately 10:10 a.m., Whewell observed a red 1991 Acura Legend traveling at a speed of forty miles per hour in a twenty-five mile per hour zone. Whewell proceeded to follow the vehicle, which subsequently increased its speed and eventually went onto a dirt road in a wooded area of a park that was not visible from the roadway. The park was approximately seven-tenths of one mile from the Connecticut border. When the Acura stopped on the dirt road, Whewell parked and approached the driver's side of the vehicle.

Whewell asked the defendant, the driver and sole occupant of the vehicle, for his license, registration and proof of insurance. After the defendant had produced his license, which was issued by the state of Connecticut, Whewell inquired as to why the defendant had attempted to elude him. The defendant did not respond. The officer then asked the defendant why he had driven into the wooded area of the park. The defendant stated that he was attempting to turn his vehicle around. As the defendant reached into the vehicle's glove compartment to obtain his registration and insurance information, Whewell, for his own safety, moved to the passenger side of the vehicle.

From his vantage point on the passenger side of the vehicle, Whewell observed a large, brown paper bag on the front passenger seat. The officer noted that the bag was new, folded and creased and without stain or soil. When the defendant had located his paperwork, Whewell asked him to lower his passenger side window so that he could pass the documentation out. The defendant lowered the window only a little way, arousing the officer's suspicion. Whewell asked the defendant again

to lower the window so that he could access the documentation. When the window was lowered more fully, the officer detected the odor of raw or bulk marijuana emanating from the vehicle. Whewell inquired as to the contents of the bag, and the defendant responded that it contained his lunch. The defendant eventually provided a Connecticut registration for the vehicle but offered no insurance card.

With the defendant's license and registration in hand, Whewell returned to his police cruiser to call in the vehicle stop and log it into the cruiser's computer. As Whewell radioed the police dispatcher, the defendant sped away in his vehicle, heading toward the Connecticut state line. Whewell pursued the defendant with his lights and sirens operating, notified the police dispatcher of his pursuit and asked that the Connecticut state police be notified. Although Whewell eventually caught up to the defendant in Rhode Island, the defendant did not stop but, instead, continued into Connecticut. The defendant's speed reached ninety miles per hour at times, as he ignored stop signs and passed a truck in a no passing zone.

The defendant proceeded into North Stonington. While traveling on Clarks Falls Road near Route 198, Whewell lost sight of the defendant's car at a bend in the road. Whewell regained sight of the defendant's vehicle only to lose it once more for the final time at a point between Boombridge Road and Route 49. Whewell was joined by two additional Rhode Island police officers, one of whom was familiar with the defendant and knew the location of his residence in North Stonington. The officers proceeded immediately to the defendant's residence, parked and awaited the arrival of Connecticut authorities. At approximately 10:25 a.m., Trooper William Bowyer of the Connecticut state police arrived on the scene. After briefing Bowyer on the situation, Whewell and the other two officers

walked with Bowyer up the defendant's driveway. Behind the house, and not visible from the road, was the red Acura that had been driven by the defendant. The defendant was not present, and the brown paper bag was no longer on the front seat.

In an area located between the defendant's vehicle and the house, Whewell found a pager. The officers requested a Connecticut state police canine unit, which subsequently tracked the defendant's scent from the vehicle to the pager and then to the house. A female resident of the house refused Bowyer's request for consent to search the residence for the defendant. Whewell left the defendant's residence at approximately 11:02 a.m. and retraced the entire route on which he had pursued the defendant in an attempt to locate the brown paper bag. At approximately 11:12 a.m., in the area of 198 Clarks Falls Road, Whewell located the bag in an open field, near some trees and bushes. The location corresponded with the place where the officer had lost sight of the defendant's car during the chase. The bag was identical to the one Whewell had seen previously on the defendant's front seat and was plainly visible from the road.

An inspection of the paper bag revealed a plastic bag containing a green, leafy substance that emitted the odor of marijuana. Subsequent laboratory analysis confirmed that the substance was marijuana, in a volume of approximately twelve ounces. Whewell turned over the bag to Connecticut authorities. The only discernible fingerprint found on the paper bag belonged to the Connecticut state trooper who had secured the evidence.

The defendant was arrested and, by substitute information, charged with reckless driving, failure to bring a motor vehicle to a full stop when signalled, reckless endangerment in the first degree, interfering with an

officer, possession of more than four ounces of a cannabis type substance and possession of marijuana with intent to sell. Prior to trial, the defendant filed a motion to suppress evidence of the brown paper bag and its contents. A hearing on the motion to suppress was held on February 26, 2008. The court issued a memorandum of decision following the hearing in which it denied the motion. The court held that Whewell had a reasonable and articulable suspicion to stop the defendant's vehicle based on his observance of the defendant's driving in excess of the speed limit, increasing his rate of speed after Whewell began to pursue him and driving off the road into a location that was not visible from the road.

The court determined that Whewell's extrajurisdictional entrance into Connecticut was justified because he was in "hot pursuit" of the defendant at the time. Whewell's search of the defendant's property after losing sight of the defendant was justified also by the officer's hot pursuit, as the court found that the amount of time between the officer's losing the defendant and the beginning of the search of the property could not have exceeded five minutes. Finally, the court held that although Whewell's search of the area that resulted in his finding the brown paper bag was not covered by the hot pursuit exception to the warrant requirement of the fourth amendment to the federal constitution, it was constitutionally permissible nonetheless, as the area was an open field in which the defendant had no reasonable expectation of privacy.

Following a jury trial, the defendant was found guilty on all counts of the information except the charge of possession of marijuana with intent to sell. The court sentenced the defendant to a total effective term of two years imprisonment, execution suspended after six months, to be followed by two years probation. This appeal followed.

Before proceeding to the defendant's claims on appeal, we note the standard of review guiding our analysis of all of them. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843, 955 A.2d 43 (2008).

I

The defendant claims that the court improperly characterized Whewell's actions as falling under the "hot pursuit" exception to the warrant requirement of the fourth amendment to the United States constitution. Specifically, he argues that the fact that Whewell lost sight of the defendant at several points during the car chase, and ultimately disengaged his pursuit of the defendant, means that Whewell could not have been in hot pursuit and, therefore, that the officer's later search was illegal. We do not agree.

The fourth amendment protects persons against "unreasonable searches and seizures" and requires that authorities obtain search warrants based on "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized" to perform constitutionally valid searches and seizures. U.S. Const., amend. IV. The fourth amendment is made applicable to the states by incorporation through the due process clause of the fourteenth amendment. *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). The United States Supreme Court repeatedly has held that

"searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the [f]ourth [a]mendment—subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). An established category of exceptions to the warrant requirement is the existence of exigent circumstances. "The term exigent circumstances . . . generally refers to those situations in which law enforcement agents will be unable or unlikely to effectuate an arrest, search or seizure, for which probable cause exists, unless they act swiftly and, without seeking prior judicial authorization." (Internal quotation marks omitted.) *State* v. *Fausel*, 109 Conn. App. 820, 826, 953 A.2d 891, cert. granted on other grounds, 289 Conn. 940, 959 A.2d 1007 (2008).

In *Warden* v. *Hayden*, 387 U.S. 294, 298–301, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967), the Supreme Court of the United States first recognized a "hot pursuit" exception to the warrant requirement. Under the hot pursuit exception, "[t]he police may make a warrantless entry onto private premises on the exigency of pursuing a fleeing suspect." *State* v. *Capozziello*, 21 Conn. App. 326, 329–30, 573 A.2d 344, cert. denied, 215 Conn. 816, 576 A.2d 545 (1990). The rationale supporting the exception is that a suspect should not be able to thwart lawful police investigation by means of escape to a private place. Id., 330. For the exception to apply, police pursuit must be "immediate or continuous" from the time it is initiated. *Welsh* v. *Wisconsin*, 466 U.S. 740, 753, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984).

The court found that Whewell was in hot pursuit of the defendant and, therefore, that his actions fell under the warrant exception. The court noted in particular that, accounting for the length of the traffic stop preceding the defendant's flight and the time it took to travel from the location of the stop to the defendant's house,

the lapse of time between Whewell's losing the defendant and his proceeding to the defendant's property could not have exceeded five minutes. The search of the defendant's property during which the defendant's vehicle was found, according to the court, properly was considered part of the officer's pursuit of the defendant.

Our review of the record leads us to conclude that the court properly determined that Whewell was in hot pursuit of the defendant at the time he searched the defendant's property. As an initial matter, there can be no question that Whewell's stop of the defendant was permissible. To perform such a traffic stop, an officer must have a reasonable and articulable suspicion that a traffic violation has occurred. See *State* v. *Batts*, 281 Conn. 682, 690–91, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). Whewell observed the defendant exceeding the speed limit. When the officer began to follow the defendant, he increased his speed, ultimately turning into a wooded area of a park that was not visible from the street. The officer plainly had a sound basis for the traffic stop.

Following his stop of the defendant, Whewell observed the bag on the defendant's front seat and smelled raw marijuana. These facts, combined with the defendant's evasive answers, previous attempt to elude the officer in his car and, finally, his speeding away from the scene as the officer checked his license and registration, prompted Whewell's pursuit of the defendant. From the point when Whewell began to pursue the defendant to the point when he finally lost sight of the defendant, Whewell was in constant pursuit. At that point, Whewell proceeded to the defendant's house. The court's finding that the time from the end of the car chase to the point when Whewell actually began to search the defendant's property could not have exceeded five minutes finds clear support in the record.

Furthermore, such a brief interlude would not be sufficient to thwart the "immediate or continuous" nature of the pursuit. See *Welsh* v. *Wisconsin*, supra, 466 U.S. 753; *Warden* v. *Hayden*, supra, 387 U.S. 297–98. We conclude that the court properly determined that Whewell was in hot pursuit of the defendant when he conducted his search of the defendant's property.

## II

The defendant also claims that Whewell's search was illegal due to the fact that he was a Rhode Island police officer operating within the boundaries of Connecticut. Citing case law from other states, he maintains that an officer may not conduct a warrantless search or a search under an exception to the warrant requirement outside that officer's jurisdiction. We disagree.

In support of his claim, the defendant cites *State* v. *Cohen*, 139 N.J. Super. 561, 354 A.2d 677 (App. Div. 1976), modified and aff'd, 73 N.J. 331, 375 A.2d 259 (1977), *Graham* v. *State*, 560 P.2d 200 (Okla. Crim. App. 1977), and *Commonwealth* v. *Mason*, 327 Pa. Super. 520, 476 A.2d 389 (1984), rev'd, 507 Pa. 396, 490 A.2d 421 (1985). These cases, which, at best, might provide this court with persuasive authority for the defendant's assertion that a police officer may not conduct a lawful search outside of his jurisdiction, do not merit much discussion. Each case concerns the authority of police officers, acting within their respective states, to conduct police activity outside of their municipal jurisdictions. The present case, therefore, is factually distinguishable. Further, none of the cases was decided on constitutional grounds or contains any constitutional analysis pertinent to the issues under review in the present case.

The defendant also cites, for the first time on appeal, § 14-283a-4 (f) (3) of the Regulations of Connecticut

State Agencies[1] and General Statutes § 54-1f.[2] Because

---

[1] Section 14-283a-4 (f) (3) of the Regulations of Connecticut State Agencies provides: "In all cases where a pursuit enters an area of law enforcement responsibility of a police agency other than that of the initiating police agency, the police agency in pursuit shall be responsible for immediately notifying the police agency responsible for such area. The desk officer or duty supervisor for the police agency responsible for such area shall determine if assistance is necessary and police officers from police agencies other than the initiating agency shall not join the outside pursuit unless:

"(A) Directed by such duty supervisor or desk officer; or

"(B) The involved pursuit unit is unable to request assistance; or

"(C) The situation demands immediate assistance.

"The supervisors of the respective police agencies involved in the pursuit shall communicate with each other to determine the respective responsibilities of each police agency and to determine which police agency will assume primary operational control of the pursuit. The supervisors shall also communicate with each other regarding any external conditions pertinent to the continued conduct of the pursuit. Communications between police agencies shall be controlled by inter-agency police radio systems, if they exist, or by telephone, if they do not."

[2] General Statutes § 54-1f provides: "(a) For purposes of this section, the respective precinct or jurisdiction of a state marshal or judicial marshal shall be wherever such marshal is required to perform duties. Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others, provided that no constable elected pursuant to the provisions of section 9-200 shall be considered a peace officer for the purposes of this subsection, unless the town in which such constable holds office provides, by ordinance, that constables shall be considered peace officers for the purposes of this subsection.

"(b) Members of the Division of State Police within the Department of Public Safety or of any local police department or any chief inspector or inspector in the Division of Criminal Justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony.

"(c) Members of any local police department or the Office of State Capitol Police and constables and state marshals who are certified under the provisions of sections 7-294a to 7-294e, inclusive, and who perform criminal law enforcement duties, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed.

"(d) Any person arrested pursuant to this section shall be presented with reasonable promptness before proper authority."

the defendant failed to raise the applicability of the regulation and the statute before the trial court, we decline to consider their applicability for the first time on appeal. See *State* v. *Rowe*, 279 Conn. 139, 149, 900 A.2d 1276 (2006) ("[w]e have long recognized that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial" [internal quotation marks omitted]). We note, however, that the defendant has failed to provide any explanation of how a state regulation and a statute pertaining to the conduct of Connecticut state law enforcement agencies would be relevant to the issue at hand involving the conduct of a Rhode Island police officer within Connecticut.

The United States Supreme Court has held that whether a police search violates the fourth amendment does not depend on the law of the state in which the police action occurs. In *Cooper* v. *California*, 386 U.S. 58, 62, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967), the court held that although states are free to impose higher standards on searches and seizures than the federal constitution requires, the fact that a police search does not comply with state law is irrelevant for the purpose of fourth amendment analysis. Again, in *California* v. *Greenwood*, 486 U.S. 35, 43–44, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988), the court concluded that a search that violated a state's constitution was not forbidden by the fourth amendment. "We have never intimated . . . that whether or not a search is reasonable within the meaning of the [f]ourth [a]mendment depends on the law of the particular [s]tate in which the search occurs." Id., 43; see also *Virginia* v. *Moore*, 553 U.S. 164, 173, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008) (noting recent decisions indicating "that when [s]tates go above the [f]ourth [a]mendment minimum, the [c]onstitution's protections concerning search and seizure remain the same").

These principles are directly relevant to the present case. Even if we were to presume that Connecticut law forbids a Rhode Island police officer from entering this state and conducting a search, as the defendant maintains, this fact would not alter our analysis under the fourth amendment. The defendant does not cite our state constitutional provisions concerning search and seizure, and so he seeks relief solely on the basis of the protections of the federal constitution. We conclude that the fact that Whewell was a police officer from another state does not make his search in Connecticut per se unconstitutional. Instead, the pertinent issue is whether the search was reasonable under the requirements of the fourth amendment. The defendant's claim to the contrary is without merit.

### III

The defendant finally claims that the search leading to Whewell's discovery of the brown paper bag in the field along the pathway of the chase was illegal. He contends again that because Whewell was a police officer of another state, he had no authority to conduct a search within Connecticut. He further argues that any exigent circumstances that may have existed during the pursuit were no longer present at the time Whewell found the bag. We are not persuaded.

It is well established in constitutional jurisprudence that "the [f]ourth [a]mendment protects people, not places." *Katz* v. *United States*, supra, 389 U.S. 351. Accordingly, fourth amendment protection requires that a person possess a legitimate expectation of privacy in the area searched. *Rakas* v. *Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978).

However, "the place searched is highly relevant to the fourth amendment analysis because expectations of privacy in some places are afforded greater constitutional legitimacy than in others." (Internal quotation

marks omitted.) *State* v. *Mooney*, 218 Conn. 85, 94–95, 588 A.2d 145, cert. denied, 502 U.S. 919, 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991). "[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Oliver* v. *United States*, 466 U.S. 170, 178, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).

The court agreed with the defendant that Whewell's search of the field was not conducted pursuant to the hot pursuit exception, but it held that the search required neither a warrant nor an exception because it was conducted in an area where the defendant could not legitimately expect privacy: an open field. We agree with the court's analysis and conclude that the defendant's claim is unavailing. The circumstances under which Whewell found the bag were not covered by the hot pursuit exception to the warrant requirement because the officer was not at the time in "immediate or continuous pursuit of the [defendant]." *Welsh* v. *Wisconsin*, supra, 466 U.S. 753. However, because the defendant could not claim a legitimate privacy interest in the field where the officer found the bag, no warrant or warrant exception was required. There was no evidence in the record, nor did the defendant make any allegation, that the property on which the bag was found belonged to the defendant. The court properly held that, given the bag's location, any officer or private citizen could have found it and turned it over to the Connecticut authorities without implicating the defendant's constitutional rights against unreasonable searches and seizures. Put another way, there was no constitutional significance to Whewell's status as an out-of-state police officer at the time he found the bag. The defendant cites no authority to support his assertion to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.